**In re Robert J. BRADLEY, Sr., BBC Real Estate Partnership, Debtors.**

**Bankruptcy Nos. 91–13893 K, 91–14183 K.**

United States Bankruptcy Court, W.D. New York.

July 17, 1995.

William A. Savino, Damon & Morey, Buffalo, NY, for Sandra Bradley.

James Zane, Zane and Rudofsky, New York City, for debtors.

MICHAEL J. KAPLAN, Chief Judge.

Robert Bradley, Sr. is an individual operating as a Chapter 11 Debtor-in-Possession. He has so operated for nearly four years, and a plan of reorganization has been filed, but not yet confirmed. At the time he filed Chapter 11, he was married to Sandra Bradley. In recent months they have separated, and a divorce proceeding is pending. She has filed a request for payment of an administrative expense in the estimated amount of $1 million, claiming this to be the estimated amount of her right to alimony, maintenance or support, as will eventually be fixed by the divorce court. Her attorneys, the attorneys for the creditors' committee, and the attorneys for the Debtor have briefed this issue.

The Court finds that her claim is not entitled to administrative expense status, but that she is entitled to some forms of relief in this case.

■ By Order of November 24, 1992, this Court ruled that when a Chapter 11 Debtor-in-Possession is a natural person, his person-

al expenses and his obligations for incidents of his personal life are every bit as much a part of the ordinary course of his business and financial affairs as are expenses incident to the operation of the various shopping malls, nursing homes, and office buildings that he owned.[1] That ruling was in response to an effort by the creditors' committee and a particular creditor to have the Court limit his personal allowance. The Court declined to fix his allowance and decide what amounts he could and could not spend and for what purposes. Rather, if his personal spending was so eroding property of the estate as to give rise to grounds for the appointment of a trustee or for conversion of the case, then the creditors' committee could make such a motion. It never did.

■ When the Court ruled that any and all property of the Debtor's estate could be used by the Debtor for the satisfaction of his personal obligations and expenses, that did not mean that every person to whom he became obligated had a right to look to property of the estate for payment. In other words, not all such obligees are entitled to payment as an administrative expense under 11 U.S.C. § 503. Rather, the import of the holding for purposes of Sandra Bradley, was that any and all property of the estate could be declared to be property of the debtor to the extent necessary for her to recover support on an ongoing basis. (Section 362(b)(2)(B) permits a debtor's former spouse to collect alimony, maintenance or support from "property that is not property of the estate" despite the existence of the automatic stay.)

■ In this regard, this Chapter 11 case is not unlike nearly every Chapter 13 case, in which the ordinary living expenses of the debtor are permitted to be paid out of his income—which is "property of the estate" under § 1306—not because they are necessarily "administrative expenses" as contemplated under § 503, but because in Chapter 13 a debtor is required to commit only his or her "projected disposable income" to creditors, and ordinary and necessary expenses of living are allowed to the debtor as deductions

---

1. A copy of that decision is appended hereto.

from take-home income before arriving at "disposable" income. Because there is no provision in Chapter 11 that is similar to § 1306, the personal service income of a debtor in Chapter 11 would clearly be property of the debtor, rather than of the estate. But Bradley has little, if any, personal service income. Thus he must spend property of the estate, and something like the Chapter 13 analysis must appertain.

■ The fact that Sandra Bradley has not availed herself, since the marital separation, of the opportunity to ask this Court to declare a portion of the estate to be "property of the debtor" so that she could collect it (in accordance with § 362(b)(2)(B)), does not convert her claim for support arrears into an administrative expense claim under § 503. Monies which this Court would surely have permitted her to collect[2] from monies that Mr. Bradley has otherwise spent may not now be collected at the expense of Mr. Bradley's creditors.[3]

■ Moreover, § 502(b)(5) clearly contemplates that unmatured claims for nondischargeable alimony, maintenance or support, are allowable in a bankruptcy case only as to "property of the debtor," and not as to property of the estate. Hence, no portion of the $1 million administrative expense request may be allowable if it is for future alimony,

maintenance, or support, if she is attempting to have that request allowed out of property of the estate rather than property of the debtor. But her request does suffice to establish that this Court may not confirm a plan of reorganization which places property of this Debtor beyond her reach.

While Sandra Bradley ought to fare no worse from her husband's bankruptcy than she would have had he not filed, she ought to fare no better either, relative to Robert Bradley's other creditors. Her injuries were not caused by the fact that Bradley is operating as a Debtor-in-Possession.[4] To rule that she comes ahead of all unsecured creditors would be to put a premium on one's filing for divorce only after a Chapter 11 petition has been filed, since she would enjoy no special status outside bankruptcy as against Bradley's other creditors.[5]

The pending plan of reorganization is complex, involving the transfer or refinancing of properties, the creation of a trust, the flowing of an income stream from another asset into the trust, etc. Today's holding, that this Court may not approve a plan that places assets that should be viewed as property of the debtor, beyond the reach of Sandra Bradley to satisfy her alimony, maintenance, or support claims, should provoke realistic negotiation regarding the final version of the

2. Chapter 11 is not a haven from meeting such obligations.

3. *Although it would be convenient were the Court able to articulate some black-letter principle such as*, "These liabilities are liabilities of the debtor, rather than liabilities of the debtor-in-possession," it seems to the Court that something more basic and less paradoxical is at work here. Section 503(b)(1) speaks of "costs and expenses" of preserving the estate, not of "claims" against or "liabilities" of the estate, or of claims or liabilities that "arise after the filing of the petition." One can intuit the sense in which such post-petition impositions as taxes, tort liabilities, environmental penalties, etc. are "costs of preserving the estate" even though they do not benefit the estate, because those expenses are caused by the operation of the estate. But no causal relationship can be perceived between the preservation or operation of Bradley's estate and a liability for alimony, maintenance or support, that would support the notion that the latter is a "cost or expense" of the former.

Except with regard to business entities that have some charitable, religious or educational

purpose, it is hard to envision any liability that a Chapter 11 estate of a business entity (such as a corporation) might incur that would not fit a common sense definition of "cost or expense of" preservation, operation or liquidation. As to cases involving natural persons, on the other hand, liabilities arising out of separation or divorce seem to be the paradigmatic example of liabilities that are totally unrelated to whatever is being attempted for the benefit of the estate.

4. Compare, for example *Reading Company v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), holding that fire damages to premises adjoining the Chapter XI debtor's premises, caused by negligence of the Chapter XI receiver, were "actual and necessary costs" entitled to administrative expense priority.

5. Effective as to cases filed on or after October 22, 1994, however, Congress has given a distributive priority to claims for pre-petition alimony, maintenance or support arrearages. 11 U.S.C. § 507(a)(7).

plan, since the possibility of conversion to Chapter 7 liquidation looms overhead.

A hearing on confirmation has been conducted and has been adjourned. Since it is unclear whether or when a plan of reorganization will be approved, the Court invites a motion from Sandra Bradley to declare a portion of the estate to be "property of the Debtor," on a monthly basis, so that she might pursue that property for her support needs under § 362(b)(2)(B). The Court expects that Robert Bradley will reduce his own personal expenditures by any amount so set aside. The Court will entertain such motion on an expedited basis if requested.

SO ORDERED.

## APPENDIX

### UNITED STATES BANKRUPTCY COURT

### WESTERN DISTRICT OF NEW YORK

In re

ROBERT J. BRADLEY, SR.

Debtor

Case No. 91–13893 K

The Debtor, Robert J. Bradley, Sr. ("Bradley") is an individual in Chapter 11. His scheduled assets are $27,121,420. They consist principally of interests in corporations or partnerships which manage real estate, operate or manage businesses (such as a hotel), or which manage or operate nursing homes. He also owns some rental properties in his own name. His scheduled liabilities are $48,-183,018. He has operated as a Debtor-in-Possession in Chapter 11 since November 12, 1991. (Also in Chapter 11 as a different case is "BBC Real Estate Partnership" in which Bradley is a 75% partner.) The Creditors' Committee in this case seeks an order fixing the amount that Bradley may spend for personal living expenses at an annualized amount that would be approximately 50% of his post-petition personal spending history. The Committee is joined by creditor, NCNB National Bank. (There is no Creditors' Committee in the BBC Limited Partnership case because NCNB National Bank is the only substantial creditor therein; NCNB is a major creditor in Bradley's individual case because of personal guarantees on the obligations of the Limited Partnership.)

According to his counsel, Bradley's post-petition personal spending is somewhat less than his pre-petition level. In the first 10 months after the filing of the case, Bradley is said to have spent $130,681.00 for what the Committee and NCNB consider to be "personal expenses." Bradley disputes that characterization as to some of that expense [1] and further argues that a significant portion of what he spends is "salary from business entities that are not in bankruptcy." [2] The movants want Bradley limited by the Court to approximately $77,000 in personal expenditures, $12,000 of which would be his Social Security benefits. (Bradley is a divorced septuagenarian with a large family and extended family, and with extensive family and business holdings in Florida as well as Western New York. For some time prior to his Chapter 11 filing he had been able to maintain what can fairly be described as an affluent lifestyle.) He, as an individual D–I–P receives anywhere from $7,000 to $20,000 per month and spends it all. (BBC Real Estate Partnership, on the other hand, has a very much higher cash flow. In August of 1992, for example, receipts were over $615,000, disbursements were over $498,000, and the ending cash balance was over $168,000.)

What makes the matter presently before the Court unusual is the fact that "businesses" so extensive, operating in Chapter 11, are rarely found to be "people"—individuals, with meals to buy, family to buy gifts for, etc. It is routine for this Court to examine the salaries that a debtor corporation is pay-

---

1. For example, Bradley argues that part of his travel expenses are business travel expenses, and not exclusively for personal pleasure.

2. This characterization points up the paradox, discussed herein, of a chapter 11 debtor who is not a business entity, but instead is a natural person. As is correctly pointed out by NCNB, whatever Bradley takes from separate entities which he owned at the time of bankruptcy, could detract from what is available to his personal creditors, whether or not those separate entities are in bankruptcy.

ing to its principal officers, directors, and stockholders. (See 11 U.S.C. §§ 1108 and 1129(a)(4).) Almost invariably such salary is based on the value of personal services provided to the corporation, and if the principal is unhappy with the salary fixed by the Court, he or she may leave the corporation and the corporation would nonetheless continue in Chapter 11 under the supervision of someone hired or appointed for the purpose. A corporation or partnership operating in Chapter 11 would rarely be permitted to pay the personal living expenses of one of its principals. But in the case of an individual operating in Chapter 11, his or her living expenses are as much a legitimate obligation and liability of the estate as are, for example, the costs of operating one of the office buildings, shopping plazas, or nursing homes Bradley owns.

The movants object to his taking (on an annualized basis) $156,000 for the maintenance of club memberships, rent for his personal residences in Buffalo and Florida, charge card purchases, etc., because, they argue, he suffered a net cash loss from January, 1992 to July, 1992 of $270,000 and is making "Capital Withdrawals" from his investments to meet expenses.

In light of the unusual posture of the matter presented to the Court, the Court asked the parties to brief the question of the Court's authority, duty, or discretion with regard to such a motion, particularly in light of the fact that although personal service *income* of such a debtor is mentioned in 11 U.S.C. § 541(a)(6), there is no provision in the Bankruptcy Code addressing the personal *budget* of a Chapter 11 debtor who is an individual (unlike Chapter 13 which contains 11 U.S.C. § 1306(a)(2) and 1325(b)(1)(B) and (b)(2)).

The Court has considered the briefs and arguments and is persuaded by the decision of the Bankruptcy Court of the Northern District of Indiana in the case of *Matter of All Seasons Industries, Inc.,* 121 B.R. 822 (Bankr.N.D.Ind.1990), that although this

Court has authority to grant the present motion, the motion must be denied.

The reasoning of the above case is compelling and needs no elucidation. I would only add the following: cases defining "property of the estate" in Chapter 11 cases for other purposes should not be presumed to be thereby setting limits of the debtor's personal allowance. As suggested by the learned Court in the above case, one does not have to determine property to fall *outside* property of the estate in order for it to be available to the debtor's personal needs; "the ordinary course" of Bradley's business includes meeting his personal expenses. Put another way, definitions of the limits of estate property, exempt property, and personal service income (11 U.S.C. § 541(a)(6)) are totally irrelevant to the question at Bar, for there is no prohibition against use of estate property or non-exempt property for personal needs when the debtor is an individual.

Furthermore, the Court declines to be drawn into passing upon each expense Bradley wishes to incur. The Committee and NCNB argue that all the Court need do is set a "cap." This is not correct, for the Court would still be asked whether "this expense" or "that expense" is to be charged as a "personal" expense that is subject to the cap or a "business expense" that benefitted the estate and is not to be charged against the personal allowance.

Lastly, the Committee and NCNB are here ignoring clear remedies provided by the Bankruptcy Code. They are free under Chapter 11 of the Bankruptcy Code to seek the appointment of a Trustee if they are prepared to demonstrate that that is in the interests of the estate or that Bradley is mismanaging his assets (11 U.S.C. § 1104(a)), or to seek the appointment of an examiner if they believe an investigation is needed into his management activities (11 U.S.C. § 1104(b)). If they believe that he is throwing good money after bad, and that liquidation values are the best that creditors can hope for, they are free to move for conversion of the case (11 U.S.C. § 1112(b)) to Chapter 7.[3] At some point, they will

---

3. The movants seem to totally ignore the distinction between an "individual's" Chapter 11 and a

corporate Chapter 11, as discussed above. The very exposure to personal liability that Bradley

presumably be free to file their own plan of reorganization if they grow tired of waiting for Bradley to propose one that is acceptable to them.[4]

In sum, the movants have failed to assert any of the well-recognized rights they possess in the context of Chapter 11 cases, and instead seek an unrecognized form of relief. The Court concludes that it has authority, nonetheless, to grant that relief, but declines to do so at the present time. The motion is denied as being currently without sufficient basis.

SO ORDERED.

November 24, 1992

/s/ Michael J. Kaplan
U.S.B.J.

suffers as a sole proprietor also bestows him with certain rights under the Bankruptcy Code that would not exist in a case involving a corporation or partnership under his ownership and control. No one can make him stay in Chapter 11 against his will; see 11 U.S.C. § 1112(a). Had creditors sought to liquidate him in Chapter 7 ab initio, he would have had an absolute right to attempt to reorganize his affairs under Chapter 11; see 11 U.S.C. § 706(a). If at any point he were to determine that efforts to maintain or to improve the going concern value of his assets are not "worth it" he may insist on liquidation under Chapter 7 (§ 1112(9(a)) and grant of discharge of his dischargeable debts, so that he may engage in other pursuits, free of the scrutiny of the movants. Although it may seem odd that a sole proprietor could enjoy greater rights in insolvency than one who has insulated himself personally from liability, the privilege of an individual to receive a fresh start and to be free of involuntary servitude does seem to have such effect. More

prosaically, however, the movants fail to convince the Court that their current complaints are qualitatively any different from complaining of the way Bradley runs his business. The judgment he exercises in determining what the market will bear in the prices he asks for rental of various rental properties might not be qualitatively different from the judgment he exercises in deciding what he may take out of the bank for personal needs and desires.

4. Bradley has three times sought extensions of the period during which only he may file a plan of reorganization under 11 U.S.C. § 1121. On each occasion there has been no significant opposition and extension was granted. At no time have the movants or any other creditor of Robert Bradley indicated to the Court in any way that they were prepared to propose a Plan of Reorganization for his assets.