In re CLUB ASSOCIATES, Debtor.

**FIRST UNION REAL ESTATE EQUITY AND MORTGAGE INVESTMENTS, Plaintiff–Appellant,**

v.

**CLUB ASSOCIATES, A Georgia Limited Partnership, Defendant–Appellee.**

No. 91–8027.

United States Court of Appeals, Eleventh Circuit.

March 30, 1992.

C. Richard McQueen, William D. Matthews, Greene, Buckley, Jones & McQueen, Atlanta, Ga. and Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, Ohio, for plaintiff-appellant.

Mark S. Kaufman, Long, Aldridge & Norman and J. James Johnson, Long, Aldridge & Norman, Atlanta, Ga., for defendant-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

COX, Circuit Judge:

In this appeal, we address the doctrine of mootness in the context of reviewing a bankruptcy confirmation order. Before the district court was a consolidated appeal challenging both the bankruptcy court's confirmation of appellee's reorganization plan under Chapter 11 and its denial of appellant's motion for relief from the automatic stay. The district court dismissed the appeal as moot as well as for reasons of equity. We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellee Club Associates ("Club") is a Georgia limited partnership that owns and operates the Tahoe Club Apartments (the "Apartments") in DeKalb County, Georgia.[1] Club purchased the Apartments on November 30, 1984, from Consolidated Capital Realty Investors ("CCRI") for $26.8 million. Club paid $4.8 million in cash at closing and gave CCRI a promissory note ("Note") for $22 million.[2] CCRI, following a name change, became Vinland Property Trust. Vinland's interest in the Note was later transferred to Club and Oaks Limited

---

1. Club has two general partners, Club One Investors and Club Two Investors, that are limited partnerships. They, in turn, are made up of numerous individual limited partners; the general partner of both Club One Investors and Club Two Investors is Investors Realty Group II, a general partnership.

2. The $22 million Note is a wrap-around note, which includes payments to service the debt secured by three prior first mortgages on the Apartments.

Partnership. Appellant First Union Real Estate, Equity and Mortgage Investments ("First Union") later succeeded to Club and Oaks's interest in the Note.[3] First Union's motion to substitute for Club and Oaks as the real party in interest in this appeal was granted by the district court.

Club filed for Chapter 11 protection on February 23, 1987. Club's principal assets included the Apartments and Club's entitlement to future capital contributions from its partners. Its primary liability was the Note. Club also owed a number of trade debts, claims held by three first mortgage lenders whose loans were included in the Note, money owed on a ground lease, tenants' security deposits, and funds advanced by Club's general partners for management and administrative services.

From the time of the filing, Club was a debtor retaining possession of the Apartments. On March 20, 1987, the bankruptcy court entered by consent a Preliminary Order on Debtor's Use of Cash Collateral ("Cash Collateral Order") authorizing Club to use income generated by the Apartments to pay taxes, satisfy monthly principal and interest obligations under prior mortgages, pay rent on the ground lease, and meet operating expenses of the Apartments up to $91,000 a month. Club paid the remainder of the revenue to First Union (post-petition payments).[4]

On October 7, 1987, First Union filed a motion for relief from the automatic stay. The bankruptcy court entered an order on January 12, 1989, denying the motion. On January 19, 1989, Club submitted its Second Amended Plan of Reorganization (the "Plan") to the bankruptcy court. The court confirmed the Plan on September 18, 1989. *In re Club Associates*, 107 B.R. 385 (Bankr.N.D.Ga.1989) (hereinafter referred to as the "Confirmation Order"). First Un-

ion filed a timely notice of appeal on October 18, 1989.

Pursuant to the Plan, *see infra*, Club filed a certificate on November 17, 1989, declaring that it had engaged in a supplemental securities offering and had thereby obtained an additional $183,300 in cash and executed investor notes totalling $549,900.[5] First Union objected to the certification on November 27, 1989. Then, on November 30, 1989, First Union moved for a stay pending appeal in the bankruptcy court. The bankruptcy court denied the motion for a stay on April 4, 1990.

In the meantime, First Union again moved for relief from the automatic stay. The bankruptcy court expressly denied this motion on December 15, 1989. First Union appealed to the district court the denial of its second motion for relief from the automatic stay. This appeal was consolidated with its appeal of the bankruptcy court's Confirmation Order. First Union also moved the district court for a stay pending appeal on April 26, 1990. Club moved the district court to dismiss both appeals for mootness and reasons of equity.[6] Finding that the Plan had been substantially consummated, that First Union had not sought a stay pending appeal in a timely manner, and that it was unable to grant effective relief, the district court granted Club's motions and dismissed First Union's appeal because of mootness and for reasons of equity. This appeal followed.

## THE PLAN

The Plan called for Club to continue its ownership and operation of the Apartments. It also restructured the Note by extending the maturity date from 1994 to 1999, reducing Club's monthly debt service payments, and applying Club's post-petition

---

**3.** For simplicity, we will hereafter refer to that interest as First Union's interest. In stating the procedural history of the case, we will refer to First Union's predecessors in interest as First Union.

**4.** At the time of confirmation, these payments totaled $4,325,972. In the confirmation order which was to follow, these post-petition pay-

ments were applied to reduce Club's principal indebtedness to First Union under the Note.

**5.** Soon after, Club paid off most of its unsecured trade claims as well as its administrative claims.

**6.** Club and First Union filed other motions not relevant here.

payments to reduce Club's principal indebtedness on the Note.[7]

The Plan also required Club to: (1) certify that it had raised $487,500 of new commitments from its limited partners or new investors through a supplemental securities offering before the Plan's effective date [8]; (2) pay all administrative expenses in cash by the effective date; (3) pay all trade creditors 80 percent of their claims within 30 days of confirmation; and (4) assume the ground lease, repay all tenant security deposits, subordinate all remaining insider claims to the full payment of the Note, assume the Apartments's management agreement, restructure another note, and decide whether to reject or assume a Satellite Master License.

The Plan also contained a self-destruct mechanism. If Club failed to raise the required $487,500 within the applicable time frame, Club would not have opposed First Union's immediate foreclosure on the Apartments.

## CONTENTIONS

First Union argues that the Plan was not substantially consummated as of the effective date and therefore effective judicial relief was still possible at the time the district court issued its order. First Union bases this argument on its alleged willingness to post a bond to protect all the interests that could be adversely affected by a reversal of the Plan on appeal. In addition, First Union argues that its motion for stay pending appeal in the bankruptcy court

was timely (and therefore the finding of inequity on the part of First Union was error) and that the district court failed to evaluate each of its issues on appeal.[9]

Club's arguments parallel the conclusions reached by the district court. It contends that substantial consummation had occurred at the time of the order, Club had re-emerged as a prospering entity, all of First Union's issues on appeal threatened Club's re-emergence as a prospering entity and effective judicial relief was impossible. Effective judicial relief was not possible, Club contends, because its limited partners had invested $183,300 in cash and committed another $549,900 in the form of notes, thereby modifying the relationship between the investors and Club. Club also argues that it had entered into contracts with third parties in reliance on the Plan, and paid off various administrative and unsecured trade creditors claims. In addition, Club contends that First Union's motion to stay was untimely (and hence, the finding that First Union did not have equity on its side was correct). Lastly, Club argues that, in light of First Union's untimely motion for stay, the district court would not have been in error for dismissing First Union's appeal, in the alternative, solely for reasons of equity.

## ISSUE

The only issue before this court is whether the district court erred in dismissing First Union's appeal as moot.[10]

7. In its Confirmation Order, the bankruptcy court determined the $4,325,972 of post-petition payments, *see supra* note 4, should be decreased to $3,813,394 before applying it to reduce the principal of the Note. This was done to take into consideration $512,578 that was used to pay taxes.

8. The effective date of the Plan was defined as not later than 60 days after confirmation.

9. First Union raises other issues on appeal which go to the merits of the Confirmation Order. Because we affirm the district court on the mootness issue, we do not reach these other issues.

10. Several other circuits have held that when an appellant has made no effort to secure a stay or has not diligently pursued their available reme-

dies to obtain one, a court is *justified* in dismissing the appeal solely on equity grounds if there has been a comprehensive change of circumstances. *See, e.g., In re Crystal Oil Co.,* 854 F.2d 79, 82 (5th Cir.1988) (finding an inequitable claim because appellant made no effort to obtain a stay); *In re Roberts Farms, Inc.,* 652 F.2d 793, 798 (9th Cir.1981) (dismissing an appeal for lack of equity because appellant never applied to the bankruptcy court for a stay). This circuit has never expressly held that a bankruptcy appeal can be dismissed solely for reasons of equity. We decline to reach the issue because it appears that the district court considered the equities of the case as an aspect of the mootness doctrine. *See Miami Center Ltd. Partnership v. Bank of New York,* 838 F.2d 1547, 1555 (11th Cir.) (hereinafter *Miami Center II*), *cert. denied,* 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46

## STANDARD OF REVIEW

■ Determinations of law made by either the bankruptcy court or the district court are reviewed by this court *de novo.* The bankruptcy court's factual determinations are subject to review under the clearly erroneous standard. A district court is not authorized to make independent factual findings. *In re Sublett,* 895 F.2d 1381, 1383–84 (11th Cir.1990).

## DISCUSSION

■ Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief. Put another way, the court must determine whether the "reorganization plan has been so substantially consummated that effective relief is no longer available." *Miami Center Ltd. Partnership v. Bank of New York,* 820 F.2d 376, 379 (11th Cir.1987) (hereinafter *Miami Center I*). As the district court properly noted, substantial consummation by itself does not resolve the issue. Even if substantial consummation has occurred, a court must still consider all the circumstances of the case to decide whether it can grant effective relief.[11]

The test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him. *In re Information Dialogues, Inc.,* 662 F.2d 475, 477 (8th Cir.1981).

■ First Union's primary contention on appeal is that the district court could have granted effective relief had it requested First Union to post an adequate bond. This may be so, but it is of no moment in this appeal. We are a reviewing court. Our responsibility is to decide whether the district court committed an error based on the record before it. We should not fault the district court for not considering whether a bond would enable it to render effective judicial relief in this case in light of the fact that First Union did not properly raise this argument in the district court.[12]

(1988). Moreover, since we find that the appeal was correctly dismissed as moot, there is no need to address an alternative ground for dismissal.

**11.** The mootness inquiry necessarily involves many subsidiary questions: Has a stay pending appeal been obtained? If not, then why not? Has the plan been substantially consummated? If so, what kind of transactions have been consummated? What type of relief does the appellant seek on appeal? What effect would granting relief have on the interests of third parties not before the court? And, would relief affect the re-emergence of the debtor as a revitalized entity? The answers to these questions provide the reviewing court with the backdrop to evaluate the ultimate issue of whether a confirmation plan has progressed to the point where effective judicial relief is no longer a viable option.

**12.** Although First Union alleges that it has always been willing to post a bond, it failed to include even one cite to the record, *see* Fed. R.App.P. 28(a)(4), in either its initial brief or reply brief to support this allegation. The conspicuous absence of the bond issue in First Union's Brief in Opposition to Motion to Dismiss Appeal ("Opposition Brief") belies its present claim that it has always been willing to post a bond to protect the limited partners' investments.

We also find it significant that although First Union was willing to concede the payments to the trade creditors in its Opposition Brief by offering to provide a credit against its debt, it did not offer the same option for the limited partners' investments. Instead, First Union contended that a refund of any of the remaining cash contributed by the limited partners would be sufficient relief. According to First Union, the limited partners did not *at this time* deserve protection for their investments as a matter of equity since the limited partners were well aware that the Confirmation Order might be reversed.

We note the one and only reference to a bond in First Union's brief in support of its motion for stay. First Union did not include this offer to post a bond in the motion itself. Instead, First Union argued in the motion, as well as for the better part of its brief in support thereof, that any interests needing protection could be safeguarded by requiring Club to deposit any excess funds it might have under the Cash Collateral Order into an escrow account. These specific and detailed entreaties, coupled with the fact that First Union referred explicitly to the limited partners' investments as not worthy of protection in its Opposition Brief, convinces us that the issue was never properly presented to the district court. We also observe, contrary to First Union's claims, that it never offered to post a bond in the bankruptcy court; rather, it

As a general rule, appellate courts will not consider an issue that is raised for the first time on appeal. As we stated in *In re Pan American World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir.1990), "[t]he corollary of this rule is that, if a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." First Union has not suggested any reason, nor can we conceive of any, for its failure to raise the bond argument at the time the district court heard Club's motion to dismiss. First Union had no difficulty raising the argument in its motion for rehearing, but a motion for rehearing is not properly used to raise an argument for the first time. We decline to exercise our discretion to address the issue of whether posting a bond would change the result reached by the district court.

■ Aside from the bond argument, which we decline to address, First Union fails to offer a rationale for reversing the district court's determination of mootness. The district court found that a number of investors, who were not parties to this case, had committed new funds to the "re-emerged Club" with the expectation of receiving a preferred return on their investments. We agree with the district court that their interests cannot be protected in the event of a reversal of the Confirmation Order.

■ First Union's other arguments address important subsidiary questions, *see supra* note 11, but they do not alter the fact that the district court was unable to render effective judicial relief. First Union contends that its failure to obtain a stay does not necessarily preclude review of its appeal. First Union is entirely correct.[13] But the district court did not hold that the lack of a stay precluded review; rather, it merely found the absence of a stay to be relevant to its equities determination which underlay the mootness inquiry. This it was entitled to do. *See Miami Center II*, 838 F.2d at 1555.

■ First Union also challenges the district court's finding that First Union did not have equity on its side because of the timing of the stay. The bankruptcy court found, and the district court agreed, that First Union did not have equity on its side because it did not seek a stay pending appeal in a timely manner. The district court held the failure "deliberate", observing, *inter alia*, that First Union had gambled that Club would not raise the necessary funds, pursuant to the Plan, thereby allowing First Union to make use of the self-destruct provision of the Plan.

In response, First Union argues that it would have been "premature" to stay the Confirmation Order before Club obtained the funds required by the Plan. The Plan was confirmed on September 18, 1989. First Union filed a notice of appeal from the Confirmation Order on October 18, 1989. Club filed a report of actions taken toward consummation of the Plan on Octo-

---

made the same escrow argument it would later maintain in the district court.

As for the notes signed by the investors, we agree with First Union that they are irrelevant to the mootness analysis. The investors and Club agreed that the payments on the notes were contingent upon the outcome of this appeal. "[W]here the third-party purchaser has expressly provided for the possibility of the sale being nullified due to an appeal, the mootness problem is not present because the reviewing court can grant effective relief." *In re Kerns*, 111 B.R. 777, 783 (S.D.Ind.1990).

**13.** It might appear from a casual reading of relevant cases that a failure to obtain a stay pending appeal sounds the death knell for a bankruptcy appeal. *See Miami Center I*, 820

F.2d at 379 (finding that it was powerless to render total relief because debtor failed to obtain stay with the result that the property was sold at foreclosure); *In re Matos*, 790 F.2d 864 (11th Cir.1986) (same); *Markstein v. Massey Assoc., Ltd.*, 763 F.2d 1325 (11th Cir.1985) (same); *In re Sewanee Land, Coal & Cattle, Inc.*, 735 F.2d 1294, 1295 (11th Cir.1984) (same). Despite the appearance that a failure to obtain a stay is a blanket discharge of an appellate court's duty to review a bankruptcy court's confirmation order, the fact remains that the absence of a stay does not *compel* a finding of mootness *in all cases*. "Failure to secure a stay is not *per se* dispositive of *all* the issues before" a reviewing court. *Miami Center I*, 820 F.2d at 379 (quoting *In re AOV Indus.*, 792 F.2d 1140, 1147 (D.C.Cir. 1986)).

ber 20, 1989. Club did not certify that it had the funds until November 17, 1989. First Union did not seek a stay until November 30, 1989. First Union would have us believe that it was "reasonably reacting" to the "conditional" order issued by the bankruptcy court.

It is important to understand that First Union does not contend that the Confirmation Order was not final in the sense that it was not appealable. Indeed, they could not. This contention would have been in direct conflict with their act of timely filing a notice of appeal from the "conditional" order. Moreover, we note that First Union was well aware of the actions being taken by Club in furtherance of the Plan since the moment the Plan was confirmed by the bankruptcy court in its September 18, 1989 final order. First Union should have moved the bankruptcy court to stay the order before Club undertook its securities offering instead of waiting to see whether it would be able to employ the self-destruct provision of the Plan. We therefore agree with the district court that First Union's failure to seek a stay prior to Club's certification of funds is a factor supporting a finding of inequity.

First Union also points out that the district court failed to explain why it could not grant the relief requested in Appellants Issues on Appeal 1 through 3. The concept of mootness is based upon the premise that a court will undertake the task of carefully examining each issue presented on appeal.[14] *In re AOV Indus., Inc.,* 792 F.2d 1140, 1148 (D.C.Cir.1986) ("[A] court cannot avoid its obligation to scrutinize each individual claim, testing the feasibility of

granting the relief against its potential impact on the reorganization scheme as a whole."). Courts certainly have a duty to scrutinize every claim, but in this case, any omission to do so is harmless. It is clear from the record that the relief requested by First Union in its first three issues on appeal would have jeopardized the Plan as a whole, which in turn would have put at risk the limited partners' newly invested funds.

## CONCLUSION

An appeal is moot when a court becomes unable to provide effective judicial relief. Because the district court did not err in finding that it could not render effective judicial relief, we affirm the district court's dismissal of this appeal as moot.[15]

AFFIRMED.

---

14. The first three issues raised by First Union on appeal to the district court were: "(1) Whether the Bankruptcy Court misapplied and misconstrued *United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd.* [484 U.S. 365], 108 S.Ct. 626 [98 L.Ed.2d 740] (1988) when it confirmed the Debtor's Chapter 11 plan of reorganization (the 'Plan') and ordered that the Debtor's indebtedness to CCRI, an undersecured creditor not entitled to post-petition interest, be reduced by over $3,800,000 during the thirty-two months between the date Debtor filed for relief and the effective date of the confirmed Plan; (2) Whether the Bankruptcy Court ignored or misread *In re Ridgemont Apartment Associates, Ltd.,* No. 88–02855 (Bankr.N.D.Ga. August 11, 1988) and

thereby created a conflict among the bankruptcy judges in the Northern District of Georgia; (3) Whether the Bankruptcy Court erred in calculating First Union's secured and unsecured claims by, among other things, improperly applying certain post-petition payments to reduce First Union's allowed claim."

15. First Union also moves this court to strike Club's brief in its entirety because Club attached three exhibits to its brief. This motion was carried with the case. We grant this motion in part; we grant the motion to the extent of disregarding the attached exhibits and all references to them in Club's brief.