ALITO, Circuit Judge,
dissenting, joined by Circuit Judges BECKER, GREENBERG, LEWIS, McKEE and SAROKIN.
The majority’s decision in this case creates a bad precedent for our circuit. The majority adopts the curious doctrine of “equitable mootness,” which it interprets as permitting federal district courts and courts of appeals to refuse to entertain the merits of live bankruptcy appeals over which they indisputably possess statutory jurisdiction and in which they can plainly provide relief. According to the majority, there is no clear rule for determining when a bankruptcy appeal is “equitably moot.” Instead, this is said to be a discretionary determination to be made in the first instance by the district court based on a weighing of five factors that the majority has culled from the opinions of our “sister circuits.” In my view, if the doctrine of “equitable mootness” has any validity, it is more limited than the majority holds.
The dangers inherent in the majority’s adoption and broad interpretation of this doctrine are illustrated by this ease. In simple terms, this is what happened. After filing for relief under Chapter 11 of the Bankruptcy Code, Continental Airlines continued to use certain aircraft and jet engines that were held as collateral entrusted to the Trustees. Believing that their collateral was undergoing a dramatic diminution in value, the Trustees in August 1992 filed a renewed motion in the bankruptcy court seeking “adequate protection” under 11 U.S.C. § 363(e). During the next eight months, while the Continental reorganization plan proceeded toward confirmation, the bankruptcy court did not rule on this motion. In March 1993, Continental insisted that the bankruptcy court rule on the Trustees’ motion at the same time that it confirmed the plan, and Continental told the bankruptcy judge that unless the motion was denied, the prospective investors in the reorganized corporation would withhold funding, and the reorganization would not go forward. See Continental Br. at 5-6 & n.l. Furthermore, Continental took the position that if the plan was confirmed and went into effect, any appeal would be moot. See Continental Br. at 21. The bankruptcy court then simultaneously denied the Trustees’ motion and entered the order confirming the plan. The Trustees exercised their statutory right to appeal to the district court, and in my view the need for review by an Article III court is particularly acute when the challenged ruling *568 of the bankruptcy court is made under circumstances such as these.[3]
The Trustees, however, have been utterly denied such review. In the initial level of appeal, the district court opined that the Trustees probably would have won if the merits of their appeal had been reached (JA 1755-56), but the district court dismissed their appeal as moot. Likewise, the majority of our court describes the Trustees’ arguments as “interesting and challenging” (Maj. Op. at 557) but then throws them out of court without reaching the merits of their arguments. And the majority does this even though (a) this case is clearly not “moot” in any proper sense of the term, (b) we unquestionably have statutory jurisdiction, and (e) we have a “virtually unflagging obligation” to exercise the jurisdiction that we have been given. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). I am puzzled and troubled by what the majority has done.
I.
As the majority notes, the Trustees have not contested the existence of the doctrine of “equitable mootness,” and in light of the Trustees’ position, I think that it is appropriate to assume the existence of this doctrine for purposes of this appeal. The majority opinion, however, does not simply assume the existence of this doctrine but adopts it as part of the law of our circuit. In doing so, the majority does not undertake an independent analysis of the origin or scope of the doctrine but is instead content to rely on the decisions of other courts of appeals. From these decisions, the majority extracts five factors, which are to be weighed by the district court in the initial level of appeal for the purpose of determining whether the appeal is “equitably moot.” Maj. Op. at 559. These factors are: “(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.” Maj. Op. at 560.[4]
I am not convinced that the majority’s test is consistent with the law of all of the circuits that the majority claims to be following. For example, the Eleventh Circuit holds that the proper test is “whether the ‘reorganization plan has been so substantially consummated that effective relief is no longer available.’ ” In re Club Associates, 956 F.2d 1065, 1069 *569 (11th Cir.1992) (quoting Miami Center Ltd. Partnership v. Bank of New York, 820 F.2d 376, 379 (11th Cir.1987)). This inquiry seems quite different from the majority’s indeterminate five-factor test. But even if the majority’s analysis is supported by the decisions it cites, and even though I think that those decisions deserve careful and respectful consideration, I think that the in banc majority should have made an independent examination of the basis and scope of the doctrine of “equitable mootness” before engraving it in our circuit’s law.
What is the basis of this doctrine? As the majority acknowledges, it does not stem from the “ease-or-controversy” requirement of Article III. See Maj. Op. at 558. For example, it is not argued that the case now before us is moot in the Article III sense.
Nor does it appear that this doctrine is rooted in non-Article III mootness decisions “reflect[ing] avowedly flexible doctrines of remedy and judicial administration.” 13A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3533.1 at 222 (1984). These doctrines are said to focus on the question whether “granting a present determination of the issues offered, and perhaps the entry of more specific orders, will have some effect in the real world.” Id. at § 3533.1 at 226 (footnote omitted). Here, it is clear that a determination of the merits of the issues raised by the Trustees and the entry of a remedial order on the basis of such a determination would have “some effect” — and potentially quite a substantial effect — in the real world. (That is precisely why Continental does not want us to entertain the appeal!)
Thus, as this case well illustrates, the doctrine of “equitable mootness” is not really about “mootness” at all in either the Article III or non-Article III sense. As the Seventh Circuit stated in a passage that the majority quotes with approval (see Maj. Op. at 559), “[t]here is a big difference between inability to alter the outcome (real mootness) and unwillingness to alter the outcome (‘equitable mootness’). Using one word for two different concepts breeds confusion.” In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir.) (emphasis in original), cert. denied, — U.S. -, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994).
If the doctrine of “equitable mootness” is not based on real mootness principles, on what is it based? The cases cited by the majority and the parties suggest two possible answers.
The first is provided by the earliest court of appeals decision cited by the majority, In re Roberts Farms, Inc., 652 F.2d 793, 796-97 (9th Cir.1981), and several others. See In re AOV Industries, Inc., 792 F.2d 1140, 1147 (D.C.Cir.1986); In re Information Dialogues, Inc., 662 F.2d 475, 477 (8th Cir.1981). The modest authority on which the Roberts Farms court relied was a provision of former Bankruptcy Rule 805, which concerned stays pending appeal. Added by a 1976 amendment to the rule, the provision in question stated:
Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pen-dency of the appeal.
Although I do not find the Roberts Farms opinion entirely clear, I think that the best reading of the opinion is that the challenge to the plan of reorganization in that case could not be entertained because no relief was practicable as a result of the many post-confirmation transactions that were irreversible due to this provision of former Rule 805. See 652 F.2d at 797. In any event, whether or not this is what the Roberts Farms court meant to say, I do not see how any broader rule could reasonably be extracted from the provision of former Bankruptcy Rule 805[5] on which the Roberts Farms court relied or from the analogous provisions now contained *570 in 11 U.S.C. §§ 363(m) and 364(e).[6] If one begins with narrow provisions such as these — -which merely prevent the upsetting of certain specific transactions if stays are not obtained — I do not see how one can derive the broad doctrine of “equitable mootness” that the majority in this case appears to embrace.
What apparently happened, however, was that the holding of Roberts Farms was gradually extended well beyond anything that could be supported by the authority on which Roberts Farms rested. Subsequent cases first cited Roberts Farms in support of the proposition that a bankruptcy appeal cannot be entertained if the court could not grant “effective relief.” See, e.g., In re Information Dialogues, Inc., 662 F.2d at 477. Later, Roberts Farms was interpreted more expansively to mean that an appeal could not be entertained if a court could not award relief that was “equitable.” See In re Chateaugay Corp., 988 F.2d 322, 324 (2d Cir.1993) (citing Roberts Farms). And this latter holding figures prominently in the majority’s analysis. See Maj. Op. at 558. In my view, this gradual but ultimately quite substantial extension of Roberts Farms cannot be squared with the narrow authority on which that decision relied. Accordingly, if anything like the majority’s decision in this case is to be defended, some other foundation for the doctrine of “equitable mootness” must be found.
The second possible basis for the doctrine of “equitable mootness” is suggested in In re UNR Indus., supra, where the Seventh Circuit wrote:
Several provisions of the Bankruptcy Code of 1978 provide that courts should keep their hands off consummated transactions. For example, 11 U.S.C. § 363(m) says that the reversal of an order authorizing the sale or lease of property of an estate “does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal.” Unless the sale is stayed pending appeal, the transaction survives even if it should not have been authorized in the first place. See In re Sax, 796 F.2d 994 (7th Cir.1986); cf. In re Edwards, 962 F.2d 641 (7th Cir.1992) (concluding that § 363(m) does not, however, forbid all forms of collateral attack). Another section of the Code, 11 U.S.C. § 1127(b), dramatically curtails the power of a bankruptcy court to modify a plan of reorganization after its confirmation and “substantial consummation.” Section 1127(b), unlike § 363(m), does not place any limit on the power of the court of appeals, but the reasons underlying §§ 363(m) and 1127(b) — preserving interests bought and paid for in reliance on judicial decisions, and avoiding the pains that attend any effort to unscramble an egg — are so plain and so compelling that courts fill the interstices of the Code with the same approach.
20 F.3d at 769. Thus, the court seemed to say that the Bankruptcy Code contains an “interstice” — a gap — regarding the circumstances under which an appeal that might upset a plan of reorganization may be pursued. Further, the court appeared to suggest that the federal courts have the authority to create a rule of federal common law to fill this gap. See, e.g., United States v. Little Lake Misere Land Co., Inc., 412 U.S. 580, 593, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973) (referring to the “ ‘power in the federal courts to declare, as a matter of common law or “judicial legislation,” rules which may *571 be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress’ ”) (citation omitted).
This is an interesting theory, but I find it unnecessary to decide in this case whether it is correct. For present purposes, what is important is to note that, even if this theory is correct, it has nothing to do with mootness. Instead, it concerns a federal common law rule designed to promote certain policies of Chapter 11 of the Bankruptcy Code. These policies are the facilitation of reorganizations and the protection of those who reasonably rely on reorganization plans. As I explain below, neither of these policies justifies what has happened in this case — the refusal of the Article III courts to entertain a live appeal over which they indisputably possess statutory jurisdiction and in which meaningful relief can be awarded.
II.
A How can the objective of preserving the Continental reorganization justify what the majority has done? The Trustees are not seeking to upset the plan of reorganization; rather, they are attempting to obtain payments that they claim are due to them pursuant to that plan. Moreover, even if the success of the reorganization might be impe-rilled if the Trustees obtained the full relief that they are seeking — an empirical proposition that is not self-evident — the courts could surely fashion some measure of lesser relief that would not disturb the reorganization. In order to justify its decision, which slams the courthouse door on the Trustees before they are even heard on the merits, the majority would have to show that the Trustees could not be awarded any relief — not one dollar — without upsetting the Continental reorganization, and obviously they cannot do any such thing. I do not dispute the desirability of preserving the Continental reorganization, but to my mind this objective implicates a question of remedy, to be decided after the merits of the Trustees’ arguments are addressed, and not a threshold question of “mootness.”
In treating this as a threshold question, the majority, I believe, has been confused by the misleading term “equitable mootness, which, as I have discussed, does not actually involve mootness at all. The federal courts are accustomed to considering questions of Article III mootness, and the majority, in my view, has fallen into the trap of thinking that the question of “equitable mootness” that is now before us must be treated as if it were a question of Article III mootness. Whether a case is moot in the Article III sense is, of course, a jurisdictional question, see, e.g., Rosetti v. Shalala, 12 F.3d 1216, 1223 (3d Cir.1993), and therefore it is a question that we are obligated to resolve before we consider the merits of an appeal. See, e.g., United Wire Metal and Machine Health and Welfare Fund v. Morristown Memorial Hosp., 995 F.2d 1179, 1190 (3d Cir.), cert. denied, 510 U.S. 944, -, 114 S.Ct. 382, 383, 126 L.Ed.2d 332 (1993); Rogin v. Bensalem Tp., 616 F.2d 680, 684 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Moreover, if we conclude that an appeal is moot in this sense, we have little remedial flexibility; we generally have no choice but to dismiss. See, e.g., U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, — U.S. -,-, 115 S.Ct. 386, 389-90, 130 L.Ed.2d 233 (1994); Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895) (when “an event occurs which renders it impossible for this court, if it should decide the ease in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal”).
By contrast, the doctrine that is involved here — which is not really a doctrine of mootness at all — does not demand or justify similar treatment. It does not present a jurisdictional question; we are not required to consider it before proceeding to the merits; and even if we find that it is applicable, it does not necessarily dictate that we dismiss the appeal or affirm in its entirety a district court order of dismissal. Rather, we retain the ability to craft, or to instruct the district or bankruptcy courts to craft, a remedy that is suited to the particular circumstances of the case. Thus, a remedy could be fashioned *572 in the present case to ensure that the Continental reorganization is not undermined.
B. Much the same is true with respect to the objective of protecting reasonable reliance interests. In my opinion, this is also a remedial consideration; if the Trustees win on the merits, the need to protect reasonable reliance interests can be fully taken into account in crafting an appropriate remedy. I thus see no need to resolve the question of reasonable reliance interests at this time.
The majority, however, not only wrongly treats this as a threshold, rather than a remedial, consideration, but engages in an analysis that flies in the face of the language of the plan and'seems to assume an extraordinary degree of naivete on the part of the Investors and the others who are said to have relied on the plan.
’ I will focus on the Investors because their plight looms large in the majority’s analysis. When the Investors decided to invest in the reorganized company, NewCal, they knew or should have known that under the reorganization plan NewCal would be required to pay the Trustees’ claim if it was ultimately allowed. Section 10.1 of the plan provided that NewCal would pay “Allowed Administrative Claims.” Moreover, in order to persuade the bankruptcy court to reject the Trustees’ request that a cash reserve be established prior to confirmation to cover their claim, Continental argued that such a reserve was unnecessary because if the Trustees’ claim was allowed it would be “an Allowed Administrative Claim which would be paid in accordance with the terms of Section 10.1 of the Plan.” JA 1039. Under these circumstances, any prudent investor, in deciding whether to invest in NewCal on particular terms, would have taken into account the range and likelihood of possible outcomes in the Trustees’ appeal, including the possibility that some or all of the amount sought by the Trustees would have to be paid as an administrative claim pursuant to Section 10.1 of the plan. No reasonable investor would have proceeded on the assumption that the Trustees would definitely recover nothing. And the same is true of the other parties that relied on the plan. Thus, I am skeptical about the reliance interests that are claimed here, but in any event I fail to see why this issue needs to be resolved at the threshold of this case rather than at the remedial stage, if that stage is ever reached.
C. One final aspect of the majority opinion warrants a response, and that is the majority’s discussion of the Trustees’ failure to seek or obtain a stay. I have two comments regarding this discussion.
First, while it might be desirable to have a rule that flatly requires a stay whenever a party takes an appeal that might upset a plan of reorganization, neither the Bankruptcy Code nor the Bankruptcy Rules contain any such sweeping provision; our court had not adopted any such rule at the time of the Trustees’ appeal[7] (and, indeed, still has not done so); and it would consequently be unfair to apply such a rule to the Trustees retroactively.
Second, in the absence of such a blanket rule, we should focus on whether the purposes that would be served by a stay require that the Trustees be thrown out of court at the threshold. The purpose of a stay in this context is to prevent transactions that might otherwise occur in reliance on the plan of reorganization and that would be difficult or painful to undo if the appeal were to succeed. Accordingly, the Trustees’ failure to obtain a stay in this case might limit the relief that would be available to them if they succeeded on the merits of their appeal, but it cannot justify the refusal at the outset even to consider their arguments.
In sum, I believe that the Trustees’ claim should be entertained on the merits. The mere act of entertaining that claim would not imperil Continental’s reorganization or impair any legitimate reliance interests. If the Trustees’ claim were considered and they won on the merits, any threat to the reorga *573 nization or to legitimate reliance interests could be taken into account in framing the Trustees’ relief. What the district court and the majority have done — throwing the Trustees out of court before the merits of their claim are even heard — is unjustified and unjust.
For these reasons, I respectfully dissent. I would reverse the order of the district court and remand for a decision on the merits.

. I wish to make clear that I express no criticism of Continental or the bankruptcy judge. My point is simply that the Trustees’ statutory right to Article III review should be honored.

. Even if I were prepared to endorse the majority’s five-factor test, I would strongly disagree with its holding that the weighing of these factors is a discretionary determination to be made in the first instance by the district court and reviewed by us for abuse of discretion. In support of this holding, the majority relies on an abstention case, a laches decision, and two opinions involving the scope of remedial orders. See Maj. Op. at 560. The majority does not rely on any bankruptcy cases — undoubtedly because there is an unbroken and well-established line of authority from this court holding that "[b]ecause the district court sits as an appellate court in bankruptcy cases, our review of the district court's decision is plenary.” See, e.g., In re Visual Industries, Inc., 57 F.3d 321, 324 (3d Cir.1995) (citing In re Stendardo, 991 F.2d 1089, 1094 (3d Cir.1993)); see also In re Cohn, 54 F.3d 1108, 1113 (3d Cir.1995) ("Our review of the district court's order is plenary because in bankruptcy cases the district court sits as an appellate court.’’) (citations omitted); In re Columbia Gas System Inc., 50 F.3d 233, 237 (3d Cir.1995); Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir.1988); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101 (3d Cir.1981). Here, as in the cases cited above, the district court sat as an appellate court; I would apply the above decisions — which I assume the majority does not mean to overrule— and exercise plenary review over the district court's order in this case.
Separate and apart from the fact that our precedent calls for application of plenary review in this case, I further believe that such review is appropriate here. We are essentially called on to review whether the district court properly decided not to reach the merits of the Trustees' appeal. We are in just as good a position to make this determination as was the district court, which sat as an appellate court in this case. In addition, the majority acknowledges that the doctrine it adopts must be “limited in scope and cautiously applied,” see Maj. Op. at 559, and I think that plenary review would better serve these ends.

. The current rule governing stays pending appeal, Bankruptcy Rule 8005, does not contain similar language, but analogous requirements now appear in 11 U.S.C. §§ 363(m) and 364(e). See footnote 4, infra.

. 11 U.S.C. § 363(m) states:
The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
11 U.S.C. § 364(e) states:
The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or hen so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

. In In re Joshua Slocum, Ltd. 922 F.2d 1081, 1085 (3d Cir.1990) (footnote omitted), we noted that "only two provisions of the Bankruptcy Code, 11 U.S.C. §§ 363(m) and 364(e), specifically require that a party seek a stay pending appeal,” and we "decline[d] to interpret the mootness principles in such a way that would, in effect, create a third situation where parties are required to seek a stay.”