**In re CITATION CORPORATION, et al., Debtors.**

**AVCO Corporation, Appellant,**

**v.**

**Citation Corporation, et al., Appellees.**

**Bankruptcy No. 07–1153–TOM–11.**

**Civil Action No. 2:07–G–00911–S.**

United States District Court,
N.D. Alabama,
Southern Division.

July 2, 2007.

---

**34.** 346 B.R. at 545.

Caroline A. Reckler, Josef S. Athanas, Latham & Watkins LLP, Chicago, IL, Marc P. Solomon, Burr & Forman, LLP, Michael Leo Hall, Birmingham, AL, for Debtors.

## ORDER DISMISSING APPEAL

GUIN, District Judge.

This cause is before the court on the appeal of AVCO Corporation ("AVCO") from the bankruptcy court's April 5, 2007, "Order (I) Approving Disclosure Statement and (II) Confirming the Debtors' Prepackaged Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code" (the "Confirmation Order"). The appellees, Citation Corporation, et al., (collectively, "Citation"), have filed a Motion to Dismiss the appeal because they claim AVCO lacks standing to bring the appeal, and because they claim the appeal is equitably moot[1].

## FACTUAL AND PROCEDURAL BACKGROUND

Citation, a privately-held Delaware corporation based in Birmingham, Alabama, designs, develops, manufactures and sells iron and aluminum castings. On September 18, 2004, Citation filed petitions (the "Citation I Cases") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Citation's Third Amended Joint Plan of Reorganization (the "Citation I Plan") was confirmed by the bankruptcy court on May 18, 2005. Under the Citation I Plan, a subordinated note (the "Subordinated Note") in the principal amount of $10 million was issued to a trust (the "Creditor Trust[2]") for the benefit of holders of allowed general unsecured claims in full satisfaction of those claims. The Citation I Plan discharged general unsecured claims. AVCO, as a general unsecured claimholder[3] in the Citation I Cases, is a beneficiary of the Creditor Trust.

In 2006, a decline in demand for parts manufactured by Citation, and the corresponding reduction in cash flow, resulted in insufficient income to pay the interest on Citation's secured debt. Citation and its secured lenders decided to restructure Citation's balance sheet to free working capital to continue operations, pay debts as they become due in the ordinary course of business, and fully implement the Citation I Plan. On March 12, 2007, Citation filed

---

1. General Electric Capital Corporation, GE Capital, CFE, Inc., and Heller Financial, Inc., (collectively "GECC"), Citation's major secured creditors, have filed a notice of Joinder in Support of the Motion to Dismiss.

2. Hasbrouck Haynes is the trustee of the Creditor Trust, and is the holder of the Subordinated Note.

3. AVCO's claims in the Citation I Cases are in dispute. AVCO, a designer and manufacturer of crankshaft parts for airplane engines, designed a crankshaft, and Interstate Forging ("IFI"), a Citation subsidiary, manufactured these crankshafts for AVCO. Because of in-flight failure of some of these crankshafts, AVCO grounded certain airplanes and installed new crankshafts manufactured by IFI. AVCO maintains that it suffered damages in excess of $100 million because of the crankshaft failures. Citation claims that the crankshaft failures were caused by AVCO's defective design, and AVCO asserts that the failures were caused by IFI's defective manufacturing. Litigation is ongoing in several states, including Ohio, Pennsylvania and Texas, and the bankruptcy court has not estimated the value of AVCO's claim in the Citation I Cases. However, the bankruptcy court did estimate AVCO's claim at $0.00 for plan voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

prepackaged Chapter 11 cases (the "Prepackaged Cases [4]") in order to achieve this goal. Under the "Debtors' Prepackaged Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code," (the "Prepackaged Plan" or "Citation II Plan"), Citation's balance sheet was restructured by the agreement of the secured lenders [5] of Citation to convert approximately $160 million of secured debt to equity. The Prepackaged Plan proposes to pay general unsecured creditors in the Citation II Cases, including the claim of the trustee of the Creditor Trust created by the Citation I Plan, in full in cash in the ordinary course of business [6]. Citation asserts that general unsecured creditors would receive nothing under the Prepackaged Plan if the secured lenders had not agreed to restructure their credit agreement and convert approximately $160 million of secured debt to equity.

At the April 5, 2007 hearing on the confirmation of the Citation II Plan, AVCO objected to confirmation, claiming that the Prepackaged Plan's release provisions impaired its claim in the Citation I Plan and impaired claims against Citation and third parties arising subsequent to the effective date of the Citation I Plan but before the effective date of the Citation II Plan (the "Gap Period"). Because AVCO asserted that it was impaired, AVCO maintained that it should have been allowed to vote on the Prepackaged Plan. Therefore, AVCO contended that confirmation was prohibited "because the plan fails to adequately disclose which classes are impaired and fails to provide a treatment for certain creditors in violation of [11 U.S.C. § ] 1123(a)(2) and (3)." Counsel for AVCO went on to state:

> "The votes obtained on the basis of an inadequate disclosure statement cannot form the basis of a consensual plan pursuant to [11 U.S.C. § ] 1125(a)(1). And class five, of which AVCO is a part, an impaired class if you agree with my arguments, has not consented or otherwise voted on the plan while equity holders retain and interest in violation of [11 U.S.C. § ] 1129(a)(8) and (b)(2)(B)(ii)."

(Transcript of Confirmation Hearing at 21). In the Confirmation Order, the bankruptcy court overruled AVCO's objection and confirmed the Prepackaged Plan, as amended.

## DISCUSSION

### I. STANDING

 The court must first determine whether it has jurisdiction to entertain AVCO's appeal. "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complain-

---

4. A "prepackaged" bankruptcy case involves a reorganization plan that is negotiated before the filing of the case. A disclosure statement and proposed plan is generally filed with the petition, thereby shortening the bankruptcy process and greatly reducing the expenses inherent in a "normal" Chapter 11 bankruptcy case.

5. Pursuant to the Citation II Plan, the secured lenders are 100 percent equity owners of Citation, in addition to being Citation's post-petition secured lenders.

6. At the confirmation hearing on the Citation II Plan, AVCO contended that the Subordinated Note was not funded. Citation claims that as of June 11, 2007, "Based upon wires [sic] transfers that have been made and checks that have cleared the bank after April 6, 2007, the Reorganized Debtors have made $83,505,505 in disbursements since the Effective Date of the Plan," and that "the Debtors have made regular and timely payments to all of their creditors since emerging from bankruptcy on April 6, 2007." (*Affidavit of Stephen Busby, Assistant Secretary for Citation,* attached as Exhibit A to "Reply Brief in Support of Appellees' Motion to Dismiss"). The court makes no finding whether the Subordinated Note has been funded.

ing party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury from the putatively illegal action....' " *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)).

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will by "redressed by a favorable decision." The party invoking federal jurisdiction bears the burden of establishing these elements.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). In the bankruptcy context, the "person aggrieved doctrine restricts standing more than Article III standing, as it allows a person to appeal only when they [sic] are 'directly and adversely affected pecuniarily by the order.' " *In re Westwood Cmty. Two Ass'n, Inc.,* 293 F.3d 1332, 1335 (11th

Cir.2002) (quoting *In re Troutman Enter., Inc.,* 286 F.3d 359, 364 (6th Cir.2002)).

■ Under the terms of the Citation I Plan, AVCO no longer has a claim against Citation. AVCO's potential allowed unsecured claim is that of a beneficial interest of the Creditor Trust. The Citation II Plan, as confirmed, does not release any claims of the Creditor Trust[7], which are to be paid in full in cash in the ordinary course of business. Moreover, although AVCO has not identified or alleged a Gap Period claim, any such claim would be paid in full in cash when due. Any hypothetical injury that AVCO may allege it may suffer because of a Gap Period claim would be subject to the Prepackaged Plan's release provisions, thereby impairing such a claim, but AVCO has not identified such a claim. Speculative or hypothetical claims are insufficient to establish standing. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102–106, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Shotz v. Cates,* 256 F.3d 1077, 1082 (11th Cir.2001). Therefore, the court is of the opinion that AVCO is not an aggrieved person, and consequently lacks standing to pursue this appeal. Citation's Motion to Dismiss is due to be granted.

## II. EQUITABLE MOOTNESS

■ Even if AVCO could establish that it had standing, the appeal is equitably moot. Equitable mootness is "a pragmatic principle grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *MAC Panel Co. v. Va. Panel Corp.,* 283 F.3d 622, 625 (4th Cir.2002). In determining whether equita-

---

**7.** The court notes that counsel for Hasbrouck Haynes, trustee of the Creditor Trust, supported the Prepackaged Plan. "[I]f class five had had an opportunity to vote on the plan,

[the trustee] would have voted in favor of the plan...." (Transcript of Confirmation Hearing at 53). The trustee of the Creditor Trust did not appeal the Confirmation Order.

ble mootness applies, "the court must determine whether the 'reorganization plan has been so substantially consummated that effective relief is no longer available.'" *In re Club Associates,* 956 F.2d 1065, 1069 (11th Cir.1992) (quoting *Miami Center Ltd. Partnership v. Bank of New York,* 820 F.2d 376, 379 (11th Cir.1987)).

> The mootness inquiry necessarily involves many subsidiary questions: Has a stay pending appeal been obtained? If not, then why not? Has the plan been substantially consummated? If so, what kind of transactions have been consummated? What type of relief does the appellant seek on appeal? What effect would granting relief have on the interests of third parties not before the court? And, would relief affect the reemergence of the debtor as a revitalized entity? The answers to these questions provide the reviewing court with the backdrop to evaluate the ultimate issue of whether a [confirmed] plan has progressed to the point where effective judicial relief is no longer a viable option.

*In re Club Associates,* 956 F.2d 1065, 1069 n. 11.

### A. Has a stay pending appeal been obtained? If not, then why not?

AVCO has not obtained a stay of the Confirmation Order pending this appeal. AVCO asserts that:

> The Eleventh Circuit has taken pains to clarify that failure to obtain a stay pending appeal does not automatically sound the death knell for all bankruptcy appeals and that "the absence of a stay does not compel a finding of mootness in all cases."

*Boutwell v. AmSouth Bank (In re Boutwell),* No. 03–0355–WS–C, 2003 U.S. Dist. LEXIS 25121, AT *12 (S.D.Ala.2003)(quot-

ing *In re Club Assocs.,* 956 F.2d 1065, 1070 n. 13 (11th Cir.1992)).

▬ AVCO claims it did not obtain a stay because of the speed with which the Prepackaged Plan was consummated. However, a motion to stay pending appeal under Federal Rule of Bankruptcy Procedure 8005 is a relatively short pleading which can easily be filed quickly. Lengthy legal arguments on the motion can follow later. While AVCO is correct that the absence of a stay is not determinative of whether its appeal can be heard by this court, it is a factor, among others, for the court to consider.

### B. Has the plan been substantially consummated? If so, what kind of transactions have been consummated?

In its brief, Citation lists 13 transactions that have been completed or. implemented. These are:

- Pursuant to Section 3.5 of the Plan, approximately $160 million of secured term loans have been converted to equity;

- On the Effective Date, the Restructured Credit Agreement became effective. As of April 30, 2007, the outstanding indebtedness owed under the Restructured Credit Agreement was approximately $60,500,000. The Restructured Credit Agreement continues to be the primary source of funding the Debtors are drawing on to satisfy other creditors' claims (*see* Post Confirmation Report ¶ 7);

- Using the funds made available to them under the Restructured Credit Agreement, the Debtors have made regular and timely payments of pre- and post-petition claims to all of their creditors since emerging from bankruptcy on April 6, 2007 (*see* Post Confirmation Report ¶ 8);

- Prior to confirmation of the Plan, the Debtors sold their Skokie, Illinois facility for approximately $15,243,850. As a result of the confirmed Plan, the net proceeds from this sale are being applied as set forth in the Restructured Credit Agreement to revitalize the Debtors and satisfy creditors' claims. Without the Restructured Credit Agreement, the proceeds would have been applied to pay down the secured term loans (*see* Post Confirmation Report ¶ 10);

- Prior to confirmation of the Plan, the Debtors sold their Navasota, Texas facility for $14,562,300. As a result of the confirmed Plan, the net proceeds from this sale are being applied as set forth in the Restructured Credit Agreement to revitalize the Debtors and satisfy creditors' claims. Without the Restructured Credit Agreement, the proceeds would have been applied to pay down the secured term loans (*see* Post Confirmation Report ¶ 9);

- On the Effective Date, all equity interests in the Reorganized Debtors were canceled and terminated and deemed null and void (*see* Post Confirmation Report ¶ 1);

- On the Effective Date, all property of the respective estate of each Reorganized Debtor and any property of each Reorganized Debtor that was not property of its estate revested in the applicable Reorganized Debtor (*see* Post Confirmation Report ¶ 2);

- On the Effective Date, all executory contracts and unexpired leases were assumed and revested in the Reorganized Debtors (*see* Post Confirmation Report ¶ 3);

- Reorganized Citation executed the New Stockholders Agreement. To date, ninety-four percent (94%) of the New Common Stock has been issued to those parties entitled to receive New Common Stock under the Plan (*see* Post Confirmation Report ¶ 4);

- As contemplated by the Plan, New Class A Warrants and New Class B Warrants were issued by reorganized Citation. To date, eighty-seven percent (87%) of the New Class A Warrants have been issued and eighty-six percent (86%) of the New Class B Warrants have been issued (*see* Post Confirmation Report ¶¶ 5, 6);

- Reorganized Citation's Amended and Restated Certificate of Incorporation, filed with the Delaware Secretary of State, was effective as of April 6, 2007 (*see* Post Confirmation Report ¶ 11);

- Reorganized Citation's Amended and Restated Bylaws were effective as of April 6, 2007 *(see* Post Confirmation Report ¶ 11); and

- On May 9, 2007, Reorganized Citation held its annual stockholders' meeting. At the meeting, the new board of directors for Reorganized Citation was selected.

(*Brief in Support of Appellees' Motion to Dismiss* at 18–19).

These transactions, in addition to approximately $83 million in disbursements to creditors following the effective date of the plan, compel the court to conclude the Citation II Plan has been substantially consummated.

### C. What type of relief does the appellant seek on appeal?

AVCO requests that this court reverse the Confirmation Order. In the alternative, AVCO requests that this court grant more limited relief, to remand to the bankruptcy court with instructions that the inclusion of third party releases in the Confirmation Order was improper, and that the releases must be stricken.

 

### D. What effect would granting relief have on the interests of third parties not before the court?

The consideration for the secured lenders to restructure their credit agreement with Citation and agree to convert approximately $160 million of their secured debt to equity through the Prepackaged Plan was the inclusion of third party releases. In Paragraph Y of the Confirmation Order, the bankruptcy court found that consideration adequate. The secured lenders, in all likelihood, would withdraw their support for the Prepackaged Plan which AVCO would have this court rewrite, resulting in an unraveling of the Prepackaged Plan as it exists. The transactions completed and payments made would have to be undone, and this would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Chateaugay Corp.,* 10 F.3d 944, 953 (2nd Cir.1993).

### E. Would relief affect the re-emergence of the debtor as a revitalized entity?

Absent the restructured credit agreement that is at the heart of the Prepackaged Plan, Citation would not be able to go forward as a revitalized entity. The secured lenders agreed to convert approximately $160 million of their secured debt to equity, thereby affording Citation the ability to operate and pay Citation I Plan unsecured claimholders in full, in consideration of the releases they obtained through the Prepackaged Plan and the speed with which the Citation II Plan was implemented. Granting AVCO the relief it requests would precipitate a series of events which would culminate in the secured lenders withdrawing funding of the Prepackaged Plan, resulting in Citation's inability to pay its secured obligations, operate as a viable entity, and fully fund the Creditor Trust.

Based on the forgoing, the court concludes that it could not fashion effective relief if it were to grant AVCO's requested relief on appeal. Therefore, the appeal is equitably moot.

### CONCLUSION

Because AVCO lacks the requisite standing to bring this appeal, and because the appeal is equitably moot, Citation's Motion to Dismiss is due to be **GRANTED**, and the appeal is hereby **DISMISSED** with prejudice. It is so **ORDERED**.

DONE and ORDERED.