IN RE: JMC MEMPHIS, LLC, Debtor.

*JMC Memphis, LLC, Plaintiff–Appellant,*

v.

**Soneet R. Kapila, Defendant–Appellee.**

No. 15–15370
**Non–Argument Calendar**

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 07/21/2016

Luis Salazar, Salazar Jackson, LLP, Coral Gables, FL, for Plaintiff–Appellant

Drew M. Dillworth, Patricia Ann Redmond, Eric J. Silver, Stearns Weaver Miller Weissler Alhadeff & Sitterson, PA, Miami, FL, for Defendant–Appellee

Before WILSON, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

This appeal arises from the bankruptcy court's order approving a settlement agreement as part of the Chapter 7 bankruptcy proceedings of debtor Geoffrey Edelsten. JMC Memphis, LLC ("JMC")—a non-party to the settlement agreement—appealed the bankruptcy court's order to the district court. The district court dismissed JMC's appeal as equitably moot. No reversible error has been shown; we affirm.[1]

In August 2012, JMC entered into a contract to purchase an apartment complex ("Property") from Investments Australia, LLC. The Property had been damaged badly by a number of fires, all but one of which occurred before JMC contracted to buy the Property. The last fire occurred, however, on 22 September 2012 (after execution of the purchase contract but before closing).

Following the 22 September fire, JMC and Investments Australia executed an amendment to the purchase agreement. In pertinent part, Investments Australia assigned to JMC its rights, title, and interest in insurance proceeds paid "in connection with the September 22, 2012 claim," noting that JMC was "responsible for pursuing the claim, and retaining its own attorneys and/or adjusters." In the event no insurance was recovered, Investments Australia agreed to pay JMC $85,000.

Investments Australia later filed a civil action against its insurer, International Hanover, Ltd. ("Hanover"), to recover on claims related to all fires on the Property. Hanover denied coverage, asserting several defenses.

In January 2014, Edelsten (a member of Investments Australia) filed for bankruptcy. As part of the bankruptcy proceedings, Edelsten and the other two members of Investments Australia (Levy and Mawardi) participated in mediation with Hanover to resolve the ongoing insurance dispute. The parties entered ultimately into a set-

<hr/>

1. Appellee has filed a motion to dismiss JMC's appeal for lack of jurisdiction. Because the district court's order of dismissal constitutes a final order over which we have jurisdiction and because a live controversy exists about whether the district court dismissed properly JMC's appeal as equitably moot, we DENY Appellee's motion to dismiss.

tlement agreement pursuant to which Hanover agreed to pay $750,000 to the bankruptcy trustee in exchange for a full release of all claims against Hanover under the insurance policy and an order barring future claims by any party against Hanover arising under the insurance policy.

The parties to the settlement moved the bankruptcy court to approve the settlement agreement and to issue a bar order. The bankruptcy court scheduled a non-evidentiary hearing on the motion. JMC appeared at the hearing and argued its objections to the settlement agreement. Briefly stated, JMC's position is that it—and not the members of Investments Australia or the bankruptcy estate—is entitled to 100% of the insurance proceeds.

After considering JMC's objections, the bankruptcy court approved the settlement agreement. The bankruptcy court, however, required the bankruptcy trustee to set aside $100,000 in escrow pending resolution of JMC's claim. In doing so, the bankruptcy court found that JMC's claim to the insurance proceeds was limited to proceeds connected to the 22 September fire. Moreover, in the light of the $85,000 valuation set forth in the amendment to the purchase agreement, the bankruptcy court reasoned that an escrow of $100,000 was sufficient to protect JMC's interests.

■ JMC raised no contemporaneous objection to the bankruptcy court's pronounced order and requested no stay of the bankruptcy court's order. JMC appealed the bankruptcy court's order to the district court. The district court dismissed JMC's appeal as equitably moot.[2]

We review de novo determinations of law make by the bankruptcy court or the district court and review for clear error the bankruptcy court's factual findings. In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992).

■ "Equitable mootness is a doctrine that permits courts sitting in bankruptcy appeals to dismiss challenges ... when effective relief would be impossible." In re NICA Holdings, Inc., 810 F.3d 781, 786 (11th Cir. 2015). The doctrine of equitable mootness "reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." In re Club Assocs., 956 F.2d at 1069. "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief." Id. In evaluating whether effective judicial relief is still available, the court must consider all the circumstances of the case. Id.[3]

**2.** In the alternative, the district court also concluded (and we agree) that JMC waived two of its grounds for appeal to the district court—arguments about violations of due process and of Florida law—by failing to raise sufficiently those arguments in the bankruptcy court. And the district court abused no discretion in declining to consider those two arguments for the first time on appeal. For background, see Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360–61 (11th Cir. 1984) (setting forth the "exceptional circumstances" under which an appellate court may consider an issue raised for the first time on appeal).

**3.** We have identified several factors as pertinent, among other things, to the court's mootness inquiry:

> Has a stay pending appeal been obtained? If not, then why not? Has the plan been substantially consummated? If so, what kind of transactions have been consummated? What type of relief does the appellant seek on appeal? What effect would granting relief have on the interest of third parties not before the court? And, would relief affect the re-emergence of the debtor as a revitalized entity?

In re Club Assocs., 956 F.2d at 1069 n.11.

As an initial matter, we note that JMC has failed to exercise due diligence in protecting its own financial interests. Despite having been assigned all Investments Australia's rights, title, and interest in the insurance proceeds arising from the 22 September fire (including expressly the responsibility to pursue a claim for coverage), JMC made no attempt to seek insurance coverage from Hanover. And nothing evidences that JMC participated in or contributed in any way to Investments Australia's efforts to recover payment from Hanover during the lengthy civil litigation or during the ultimate settlement negotiations.

Also significant to our decision—although not dispositive—is JMC's failure to request a stay of execution of the settlement agreement from either the bankruptcy court or the district court. In the absence of a stay order (or even a formal objection from JMC), the settling parties relied on the finality of the bankruptcy court's order and began consummation of the settlement agreement. Thus, by the time JMC filed its appeal in the district court, Hanover had already paid $750,000 to the bankruptcy trustee. And the bankruptcy trustee had already issued disbursements, pursuant to the settlement agreement, to Levy, Mawardi, and to two third parties (the mediator and Investments Australia's lawyer).

JMC contends that effective judicial relief is still available because the bankruptcy trustee currently holds over $435,000 (58%) of the insurance proceeds and because the district court could easily require Levy and Mawardi to disgorge their settlement funds. JMC also contends that because JMC seeks no recovery of the funds already disbursed to the mediator and to Investments Australia's lawyer, unwinding the settlement agreement would affect the rights of no third parties.

JMC's argument, however, ignores the full consequences of unwinding the settlement agreement. Perhaps most important, unwinding the settlement agreement would also mean unwinding Hanover's agreement to provide $750,000 in insurance coverage. Unwinding that portion of the settlement agreement would thus require all disbursement recipients—including both third parties—as well as the bankruptcy estate to disgorge all settlement funds received. Without payment from Hanover pursuant to the terms of settlement agreement, no monetary relief would be available to JMC. In addition, granting JMC relief—thus allowing JMC to assert its own claim against Hanover under the insurance policy—would require an unwinding of the bar order: a central component of the settlement negotiations.

To the extent JMC seeks only partial unwinding of the settlement agreement (leaving intact Hanover's agreement to provide coverage for the fires), granting such relief would necessarily reform the settlement agreement to reflect an agreement that no party intended/contemplated. The settlement agreement was the result of lengthy and careful negotiations and reflected a global compromise among several parties with conflicting interests. It would be inappropriate at this stage—particularly in the light of JMC's overall failure to exercise due diligence—for a court to unwind select portions of the settlement agreement to allow JMC to now pursue financial compensation. That the bankruptcy court has already escrowed $100,000 to protect JMC's interests in the insurance proceeds also weighs against unwinding of the settlement agreement.

Considering all the circumstances of this case, the district court committed no error in concluding that effective judicial relief

was unavailable and in dismissing JMC's appeal as equitably moot.

AFFIRMED.