United States Court of Appeals,

Eleventh Circuit.

No. 94-6072.

In re Lawrence William SLOMA, Debtor.

FIRST BANK OF LINDEN, Plaintiff-Appellant,

v.

Lawrence William SLOMA, Defendant-Appellee.

Jan. 30, 1995.

Appeal from the United States District Court for the Southern District of Alabama. (No. 93-0577-T-S), Daniel H. Thomas, Judge.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

The district court affirmed the judgment of the bankruptcy court in an adversary proceeding filed by the Chapter 7 debtor Lawrence William Sloma. This dispute concerns the issue of Sloma's assignment of payments under an annuity to First Bank of Linden as security for a loan, seven years prior to filing his bankruptcy petition, and claiming an exemption under the Longshore and Harbor Workers' Compensation Act.

*Background*

Sloma injured his shoulder in a work-related accident. He was employed by Gulf Coast Catering Company which provided catering services to offshore oil rigs. Damages for the injuries were governed by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901, *et seq.*

Gulf Coast and its insurer, National Union Fire Insurance Company, negotiated a settlement with Sloma to fulfill his rights

under the Act pursuant to which Sloma was to be paid $180,000.00, structured as follows:

$10,000.00 to be paid immediately

$ 5,000.00 to be paid after 5 years

$10,000.00 to be paid after 10 years

$15,000.00 to be paid after 15 years

$20,000.00 to be paid after 20 years

$ 500.00 per month to be paid for 20 years.

Upon payment of the $180,000, Sloma's employer and its carrier were discharged of any further obligation or liabilities to Sloma. The settlement was approved as an Award by the United States Department of Labor, pursuant to 33 U.S.C. § 908(i).

The employer's insurance carrier, National Fire Insurance Company, paid the $180,000.00 award to Sloma by the payment of $10,000.00 in cash to him and the purchase from Manufacturers Life Insurance Company of an annuity, naming Sloma as the Annuitant, for which National paid Manufacturers a single premium. Sloma agreed that he should be paid as follows:

$500.00 per month for 20 years certain until 240 payments have been made, and after that for the remaining life of the annuitant.

$ 5,000.00 on October 1, 1989

$10,000.00 on October 1, 1994

$15,000.00 on October 1, 1999

$20,000.00 on October 1, 2004.

On December 8, 1984, Sloma obtained a loan from the First Bank of Linden for $85,000.00 for the purpose of acquiring and operating a Western Auto Store. Sloma executed an absolute collateral

assignment of the annuity payments (provided to the Bank by Manufacturers) to secure the loan. The loan was structured to be repaid in accordance with the annuity payments that were assigned to the Bank.

The Bank continued to receive monthly payments from Manufacturers pursuant to the assignment until Sloma's business venture failed and, in violation of the security agreement contained within the note to the Bank, Sloma directed that Manufacturers forward all future payments to him personally.

Due to the default under the terms of the note and the conversion by Sloma of the monthly payments subject to the security interest and assignment in favor of the Bank, the Bank filed suit against Sloma in the Circuit Court of Morengo County, Alabama. Judgment was entered against Sloma for the amount due under the note. The Bank then caused the issuance of a garnishment against Manufacturers to enforce payments under the assignment to satisfy the judgment. The Circuit Court issued a final order directing that Manufacturers fulfill the obligation under the assignment to the Bank and pay all future annuity payments until the judgment held by the Bank against Sloma was paid.

*Procedural History*

Sloma filed a Chapter 7 bankruptcy petition on January 8, 1992, seven years after the assignment by Sloma to the Bank of his annuity payments. Sloma asserted a claim of exemption as to the payments due from Manufacturers. The Bank did not file objections to Sloma's claim of exemption within 30 days. After the petition was filed, the Bank continued to receive the monthly payments from

Manufacturers pursuant to the final judgment of the State Circuit Court.

Sloma filed an adversary proceeding against the Bank asserting that the payments due from Manufacturers were exempt property. After a trial the bankruptcy court entered a final judgment in which it determined that the annuity payments due from Manufacturers constituted an assignment of the right to receive compensation under the Longshore and Harbor Workers' Act, and that such assignment was void *ab initio,* as a matter of law.

The district court affirmed the judgment of the bankruptcy court that the benefits under the Act were not assignable and that the annuity payments were the exempt property of Sloma. This appeal ensued.

## *Standard of Review*

The facts are undisputed. The issues in this appeal are questions of law, therefore the standard of review is *de novo. In Re Club Associates,* 956 F.2d 1065, 1069 (11th Cir.1992).

## *Discussion*

Two questions are posed in this appeal. First, was the assignment of the annuity payments to the Bank by Sloma in payment of his note for $85,000.00 valid, or was the assignment barred under the anti-assignment provision of the Longshore and Harbor Workers' Act. Second, did the Bank's failure to file a timely objection in bankruptcy to the claim of the property as exempt by Sloma prevent the Bank from challenging the validity of the exemption.

## *The Assignment*

We start with the Award made to Sloma under the Longshore and Harbor Workers' Act. It states:

> The employer, Gulf Coast Catering Company, and the insurance carrier, National Union Fire Insurance Company, shall pay to Lawrence Sloma, the claimant employee, compensation in the amount of $180,000.00, in a structured settlement as specified herein above, the payment of which will discharge the liability of the employer and insurance carrier from all future installments of compensation and the file of Lawrence Sloma will be closed.

To satisfy the Award, Gulf Coast's insurance carrier, National Union, paid Sloma $10,000.00 in cash and obtained a $170,000.00 annuity from Manufacturers in favor of Sloma as the annuitant, payable in installments as set forth *supra.* Sloma subsequently assigned the payments under the annuity to the Bank to obtain a loan which the Bank would not have made absent such assignment. To determine the validity of this assignment, we must focus on the proper interpretation of 33 U.S.C. § 916 of the Longshore and Harbor Workers' Act, which provides:

> No assignment, release, or commutation of compensation or benefits *due or payable under this chapter,* except as provided by this chapter, shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived. (Emphasis added).

Neither we nor counsel have found any helpful precedent to guide us in the application of this section to the unusual facts of this case. There can be no doubt that had the employer paid Sloma $180,000.00 in cash, he could have used it in any way he desired. *Cf. Guidry v. Sheet Metal Workers' Nat'l Pension Fund,* 39 F.3d 1078 (10th Cir.1994) (en banc) (ERISA anti-alienation analysis). Here the employer paid Sloma $180,000.00, $10,000.00 in cash and the purchase of an annuity for $170,000.00. We see no material

difference whether the employer paid for the annuity or whether the employer paid Sloma $170,000.00 with which he purchased the annuity. The annuity is a payment under a contract where for a gross sum paid by the employer, Manufacturers became liable to pay certain sums to Sloma. The right to receive payments was purchased and paid for prior to Sloma's adjudication in bankruptcy. The payments are essentially repayments in installments of the sum with which the annuity was purchased. *See In Re Power,* 115 F.2d 69, 73 (7th Cir.1940). Sloma received benefits of $180,000.00 under the Act by the purchase of the annuity for $170,000.00 and $10,000.00 in cash.

The payments received by Sloma under the annuity contract were not *due and payable under the Act;* they were payments made to him by a third party, Manufacturers. What the Supreme Court said in *McIntosh v. Aubrey,* 185 U.S. 122, 125, 22 S.Ct. 561, 563, 46 L.Ed. 834 (1902), sums up the issue in this case, that "the exemption provided by the act protects the fund only while in the course of transmission to the pensioner [annuitant]. When the money has been paid to him it has "inured wholly to his benefit,' and is liable to seizure as opportunity presents itself. The pensioner, however, may use the money in any manner, for his own benefit and to secure the comfort of his family, free from the attacks of creditors...."

The purpose of the anti-assignability provisions of the Act to benefit an injured employee was served and ended once the amount of the award of $180,000.00 was paid to Sloma by the payment of $10,000.00 and the purchase, in his behalf, of an annuity for

$170,000.00. Sloma's assignment to the Bank of the payments under the annuity in repayment of his loan of $85,000, made long prior to the bankruptcy, was valid and the Bank is entitled to the payments until its loan is fully repaid. The Bank was substituted for Sloma to receive annuity payments over the period of time established by Sloma's loan repayment schedule. During that time, Sloma had no existing right to redirect the payments to himself.

*Failure to Object to Claim of Exemption*

The second issue concerns the lack of objection by the Bank to Sloma's claim of exemption within the 30-day time limit pursuant to Bankruptcy Rule 4003(b). Sloma argues that the Bank's failure to do so prevents it from now challenging the validity of the exemption. We disagree.

The validity of the assignment to the Bank of payments under the annuity and the necessity for objecting to it in the bankruptcy proceedings are interrelated. We have held that the assignment is valid and not barred by the Act. Since Sloma's lack of interest in the assigned property does not establish a basis for a proper claim of exemption, there was no need for the Bank, a secured creditor, to object. The consensual lien establishes the creditor's interest in the property. It is well established law that the trustee in bankruptcy takes only the title of the debtor in property of the estate. *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 135, 83 S.Ct. 232, 234, 9 L.Ed.2d 190 (1962). Having transferred his property interest to a creditor, a debtor cannot claim as exempt property that he does not own.

*Conclusion*

The assignment by Sloma to the Bank of Linden of the payments under the annuity was valid and not barred by the anti-assignment provisions of the Longshore and Harbor Workers' Act.

There was no need for the Bank to file an objection to Sloma's claim of an exemption because he did not own the property claimed to be exempt.

REVERSED.

HATCHETT, Circuit Judge, dissenting:

The majority states that there is no "helpful precedent to guide us in the application of this section to the unusual facts of this case." I, however, believe that a recent case from the Tenth Circuit, *In Re Delgado,* 967 F.2d 1466 (10th Cir.1992), is instructive. In *Delgado,* an injured employee received a lump sum workman's compensation settlement which she placed in a certificate of deposit maturing in five years. She also took out a loan in which she granted the bank a security interest in the certificate and assigned the certificate as collateral. The Tenth Circuit held that the bank's security interest in the certificate was not enforceable under Kansas's statute prohibiting assignment of worker's compensation benefits. The Tenth Circuit explained that:

> the Kansas provision defines compensation as including the actual payments and nowhere is there a limitation that the exemption applies only to security interests or assignments entered into before the compensation is actually paid.... [W]e recognize that [the injured employee] will receive a windfall by recovering the certificate of deposit funds after having spent the loan proceeds which have not been repaid. To avoid such a situation, a bank would need to inquire concerning the source of funds which will serve as security for a loan. In this case, though, the Bank was fully aware that the workmen's compensation award was placed in the certificate of deposit which served as security. By structuring the transaction so as to control the compensation funds before extending credit to its long-time customer, the

Bank took a risk.

*Delgado,* 967 F.2d 1466, 1468. Similarly, I believe that the assignment in this case was not valid. Sloma may "receive a windfall by recovering [the annuity installments] after having spent the loan proceeds which have not been repaid." But, just as the injured employee in *Delgado* was entitled to the windfall, Sloma is entitled to the windfall under 33 U.S.C. § 916. When it secured Sloma's loan with an assignment of the annuity that he received as compensation under the Longshore and Harbor Workers' Compensation Act, the First Bank of Linden simply took a risk that did not pay off.

Section 916 provides: "No assignment ... of compensation or benefits due or payable ... shall be valid." The majority emphasizes the words "due or payable." Apparently, it believes that these three words mean that section 916 only invalidates an assignment of compensation that is to be received in the future. I disagree for the reasons explained in *Delgado.*[1]

Even under the majority's interpretation of section 916, I believe that the assignment in this case was invalid. The majority explains:

> There can be no doubt that had the employer paid Sloma $180,000.00 in cash, he could have used it in any way he desired. Here the employer paid Sloma $180,000.00, $10,000.00 in cash and the purchase of an annuity for $170,000.00. We see no material difference whether the employer paid for the

---

[1]Admittedly, the Kansas statute in *Delgado* expressly provided: " "no ... compensation ... paid[ ] shall be assignable.' " *Delgado,* 967 F.2d 1466, 1467. It expressly included " "claim[s] for compensation, or compensation agreed upon, awarded, adjudged or *paid.'* " *Delgado,* 967 F.2d 1466, 1468. Thus, the Tenth Circuit emphasized the past tense in arriving at its holding.

> annuity or whether the employer paid Sloma $170,000.00 with which he purchased the annuity.... The payments received by Sloma under the annuity contract were not *due and payable under the Act.*

Thus, the majority argues that because Sloma's employer purchased an annuity for him, thereby satisfying its obligations, Sloma was able to assign the installments of that annuity.[2] That, however, is not what happened in this case.

In its findings of fact, the bankruptcy court found: "The settlement provided for the establishment of an annuity issued by Manufacturers Life Insurance Company ("Manufacturers"). The annuity policy provided that Sloma would receive monthly payments ... and lump sum payments ... The policy expressly provided that National Union was the owner of the policy."[3] Thus, the employer never purchased an annuity for Sloma; instead, the employer's insurance carrier, National Union, purchased an annuity in which it maintained ownership. Because of this subtle difference, I believe that Sloma was still in the course of receiving compensation "due or payable" under the majority's interpretation of section 916.

The annuity policy was the result of a settlement that was approved by the United States Department of Labor pursuant to 33

---

[2] "An annuity contract is the exact inverse of a life insurance contract. In return for a lump sum, the insurance company typically promises the annuitant periodic payments that will continue until the death of the annuitant. The lump sum is determined by the life expectancy of the annuitant, and, in this case, the insurance company gambles that the annuitants will die prior to the actuarial predictions." *Variable Annuity Life Ins. Co. v. Clarke,* 998 F.2d 1295, 1301 (5th Cir.1993).

[3] "The bankruptcy court's factual determinations are subject to review under the clearly erroneous standard." *In Re Club Associates,* 956 F.2d 1065, 1069 (11th Cir.1992). No showing of clear error regarding this fact has been made.

U.S.C. § 908(i). Section 908(i)(3) provides: "A settlement approved under this section shall discharge the liability of the employer or carrier, or both." Thus, the majority was correct when it stated: "Upon payment of the $180,000, Sloma's employer and its carrier were discharged of any further obligation or liabilities to Sloma." Sloma's employer, however, and its carrier, National Union, had not made the full payment of the $180,000 because National Union owned the annuity policy. Sloma merely stood as an intended third party beneficiary of the annuity contract between National Union and Manufacturers. As a result, the $180,000 had not been *paid* (past tense) to Sloma. Sloma was simply entitled to the installments of the annuity contract, which National Union owned; thus, he was still in the process of receiving "compensation or benefits *due or payable*." Therefore, the compensation could not be assigned to the First Bank of Linden.

In sum, I believe that the majority has incorrectly interpreted 33 U.S.C. § 916 as only invalidating assignments of compensation that has not been *paid* (past tense). Instead, the statute should be read in accordance with the Tenth Circuit's approach in *Delgado*. I also believe that even under the majority's interpretation of section 916, the facts of this case indicate that the compensation had not been *paid* (past tense), and therefore, the assignment was not valid.