**In the Matter of Clyde Thomas CARTER, Debtor.**

**Bankruptcy No. 91–80587–TBB–7.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Sept. 30, 1997.

Mark Stewart, Winchester, TN, for debtor.

Robert H. Adams, Birmingham, AL, for trustee.

Lee Benton, Birmingham, AL, for Creditors.

**Memorandum Opinion**

THOMAS B. BENNETT, Bankruptcy Judge.

### I. The Provenance

In an attempt to ameliorate the impact of a jury verdict returned in February, 1991, in the Probate Court of Bexar County, Texas against Clyde Thomas Carter ("Carter") for,

among other things, breach of fiduciary duties imposed on him as a trustee of the Harry Lee Carter Estate Management Trust, Carter initiated his bankruptcy case in March, 1991, under the provisions of chapter 11 of the Bankruptcy Code. In September, 1991, judgment was entered on the jury verdict for an amount in excess of eight million dollars ("Texas Judgment"). To date, the hopes for mitigation has not been realized. What has occurred has been an unnecessary protraction of Carter's bankruptcy case and an extensive delay in the collection of the Texas Judgment. In part, the prolonging arises from the delay in seeking and lack of obtaining confirmation of Carter's plans for reorganization. This was followed in July, 1994, by the involuntary conversion of his chapter 11 case to one under chapter 7 of the Bankruptcy Code. Joined with the reorganization and conversion skirmishes were Carter's appeals of the Texas Judgment to the Supreme Court of Texas and that of the United States which were for naught. Not to be overlooked is the calamity caused by a February, 1995, judgment of non-dischargeability of seven million dollars of the Texas Judgment by a prior judge—the second—to have been assigned Carter's bankruptcy case. All of these are but part of the history and legal melodrama which accompanied this case when assigned to this judge—the third at the bankruptcy court level.

By the time of assignment of Carter's case to this judge, all matters from the trivial to the consequential had been and continue to be contested. Furthermore and after various rulings adverse to Carter succeeding his case's conversion, he has repeatedly requested its transfer to where he asserts it more properly should be because it is closer to where he resides: the Eastern District of Tennessee. His defense to his selected forum —— this Court —— is that his first attorney chose it believing Carter would more certainly get what he wanted. These requested changes of venue have been predicated on a state of affairs which stands in stark contrast to that on which Carter has based his claim of an Alabama homestead exemption. When all does not go according to the laid plans and not believing that a debtor should structure his case to be before

a court by asserting under oath one thing when the converse is true, these venue transfer motions have been uniformly denied. Since several years elapsed from the filing of Carter's bankruptcy case to the filing of these venue changing motions, this treatment was even more justified.

Early in this case, principal and the principles of the combating parties combined to further draw out these proceedings in a manner and with the effect on the adjudication of a bankruptcy case which gives new meaning to the cost of the 279 B.C. victory over the Romans at Apulum. Counsel for Carter have come and gone. So too, have trustees of and trustee's counsel for his bankruptcy estate. Suffice it to say that some of those who arrived unscathed and vital departed less than willingly and subject to reproach.

With an exception relevant to resolution of Carter's request for payment of his asserted homestead exemption, constancy and consistency of Carter's factual testimony and assertions before this Court have not been his hallmark. What is before this judge is part of the attrition now inherent in this case. It is yet another reprise of a ruling which necessitates review of a struggle heard by the first judge in this case. It is Carter's perseverance to be paid five thousand dollars ($5,000) by James G. Henderson, the trustee of Carter's bankruptcy estate ("Trustee"), as the value of his asserted Alabama homestead exemption which must now be addressed. It is a dispute which one new to this case might have assumed was concluded by court order in 1992. Such is not the plight for Carter's right to payment for a claimed Alabama homestead exemption.

## II. The Claiming

### (a) First In Time And Unchanged

Carter first asserted a homestead exemption in the schedules filed at the commencement of his chapter 11 bankruptcy case. On schedule B–4, this is set forth: "Homestead rights under Alabama Code § 6–10–2...." Although Carter did not identify which of multiple parcels of Alabama real estate he professed to be his homestead, the voluntary bankruptcy petition listed his address as

1807 Roseberry, Jackson County, Scottsboro, Alabama ("Scottsboro Property"). Carter also swore in his petition that he had resided within the Northern District of Alabama, more specifically in Scottsboro, Jackson County, Alabama, for the one hundred eighty days preceding the bankruptcy filing or for a longer portion of this period than in any other district. Although not expressly claimed as his Alabama homestead, a cursory review of his filings which initiated this case could lead one to conclude that the Scottsboro Property may have been his Alabama homestead. As with other matters in this case, the drawing of such a conclusion based on the petition and supporting schedules, without more, is fraught with the risk of error.

It is a fact that the Scottsboro Property was owned jointly by Carter and his former wife, Francis Corrine Carter, at the time the bankruptcy case was filed. However, Carter was separated from his wife at this time, and she later requested relief from the automatic stay to be able to obtain a determination of her property interests as a part of the divorce. The request was granted by the first bankruptcy judge in this case subject to a very specific limitation on the enforcement of any divorce judgment's effect on property of the estate and on division of any property interests of the bankruptcy estate between the Carters. A divorce decree which incorporated a property division as a part of the judgment of divorce ("Divorce Decree") was entered by default on or about August 11, 1993, in the Circuit Court for Jackson County, Family Court Division. The default was based on Carter's failure to defend in the divorce action. It purported to award Francis Carter, among other properties, the full right, title, and interest in and to the Scottsboro Property free of any claims of Carter and his bankruptcy estate. Surprising as it may seem in a case with the degree of contentiousness as this one, no immediate contest of this property settlement occurred. As could be anticipated, a challenge was finally initiated by the first trustee of Carter's bankruptcy estate.

An adversary proceeding against Francis Carter alleging that the property settlement incorporated in the Divorce Decree violated the terms of this Court's order modifying the automatic stay of § 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), was filed in September, 1995. The Trustee reached a compromise with Francis Carter and others resolving the conflict between what (a) the Divorce Decree provided and (b) this Court's stay modification order and the bankruptcy laws permitted. It was approved by this Court in April, 1997. The Trustee was paid one hundred thousand dollars ($100,000) for the release of any and all right, title, and interest in and to the (i) Scottsboro Property, (ii) one thousand three hundred forty-nine (1,349) acres of real estate located in Franklin County, Tennessee (iii) 1.18 acres of real property located in the Roseberry Creek Subdivision in Jackson County, Alabama, and (iv) approximately 459.95 acres of real property located in Jackson County, Alabama. The compromise also allowed the parties to retain any and all real and personal properties as allocated pursuant to the Divorce Decree.

### (b) An Amendment In Form, But Not In Effect

Carter attempted to amend his exemptions in his amended and restated plan of reorganization filed on September 22, 1992. Listed among the proposed amendments to exemptions was one for a homestead under Ala. Code §§ 6–10–2, 6–10–4 et. seq. with respect to the claimed Alabama homestead exemption. No change had been made by this attempted amendment to what had previously been asserted for the homestead. As in schedule B–4, all that was referenced was the Alabama authority for a homestead exemption. No specific property was described or otherwise delineated as the Alabama homestead property. Numerous creditors consisting of the Harry Lee Carter Estate Management Trust, Doris Carter Corum, Joe Carter, Neil Corum, Michael Lee Corum, Grace Carter, Joette Lee Carter, Crystal Jones, Edward M. Rigsby, Blanche Carter Martin, Mollie Martin Cannon, and John Carter Martin (collectively "the Trust") objected to the Debtor's proposed claim of exemptions set forth in his amended and restated plan of reorganization. The creditors wanted Carter

to specifically identify any property claimed as exempt. This objection was supposedly resolved by what happened before the Court at a hearing held on November 4, 1992. The germane portions of this hearing are:

Counsel for the Trust, stated

[t]here are at least three other matters that I'm aware of on the docket, Your Honor. One uh is a an objection to the claim of exemptions and a response to that. I raise that one now perhaps out of the court's order simply because I think we have resolved that so I'll—we need to make sure of that but I think we have.

In response, then counsel for Carter, replied in pertinent part:

Your Honor, let me uh specifically state that uh any uh plan we've stated the statutory claim and then uh [counsel for the Trust] rightfully and correctly objected to that because he wanted us to specifically identify the property and we will specifically identify uh the property as follows if I can find that section here. uh. Homestead in Alabama property to the extent of five thousand dollars. um IRA to the extent of ten thousand dollars. . . .

Carter's counsel set forth a number of other exemptions unrelated to the claimed homestead and concluded

That would be our claim of exemptions, of course uh the court's aware it would be subject to change in the future and I don't anticipate it would. We could amend but it would have to be the exemptions as they existed on the date we filed.

Carter's counsel continued "[s]o with that I don't know that [counsel for the Trust] would have any objection to that restating [sic] the claim." Counsel for the Trust responded

I'll just leave it as my objection but that's—I'm not going to put on anything in opposition to that. There were various other things listed including cemetery plots those kind of things that he does not have and that's what I wanted to make sure of.

In reliance on this seeming resolution and with a record devoid of a description of just what property in Alabama was pronounced to be Carter's homestead, the first judge in this matter entered an order on November 13, 1992, under the terms of which Carter's right to assert a homestead exemption under Ala. Code §§ 6–10–2 was recognized. This order sets forth that:

At the hearing, debtor specified the following exemptions:

| Exemption | Amount | Code Section. |
| --- | --- | --- |
| Homestead | $5,000.00 | Alabama Code §§ 6–10–2 & 4, etc. |

\*   \*   \*   \*   \*   \*

In accordance with the following, the debtor's claim of exemptions is hereby allowed . . . .

("the 1992 Homestead Order"). The 1992 Homestead Order was not appealed and the plan containing the proposed amended exemptions was never confirmed. As is apparent from a cursory review of the 1992 Homestead Order and the transcription of the events during the hearing on which this order was based, no identification had been supplied for the specific property constituting Carter's Alabama homestead as of the date of entry of the 1992 Homestead Order.

At the time of conversion of his case to one under chapter 7, Carter's claimed homestead exemption remained the same. Subsequently, Carter requested payment of his homestead and personal property exemptions by motion filed on March 18, 1996. The Trust objected to these requests. It alleged that Carter was estopped from claiming an Alabama homestead exemption because during a hearing conducted July 11, 1994, on the motion to convert his case ("Conversion Hearing"), Carter testified that he did not reside at the Scottsboro Property when he filed bankruptcy. The Trust also contended that if Carter had a residence which constituted a homestead under Alabama law, it could only be the Scottsboro Property and the Trustee should not be required to pay the homestead claim from property of the estate which was not an Alabama homestead or proceeds from its sale. This was because at the time of the

hearing, the Scottsboro Property had not been sold.

Added to the Trust's objection was that of the Trustee. During the pendency of the case under chapter 11, the Trustee posited that monies had been received by the bankruptcy estate which Carter utilized for his personal benefit in an amount which exceeded the dollar amount of whatever his entitlement to both homestead and personal property exemptions. As a result, the Trustee asserted the exemptions claims should be considered satisfied. Relying in part on *In re Bradley* 185 B.R. 7 (Bankr.W.D.N.Y.1995), this Court overruled the Trustee's objection and held that the usage of estate monies by Carter while an individual, debtor-in-possession did not in the context of those facts before the Court result in the payment of applicable exemptions.

With regard to the homestead exemption, the Court denied the payment request because it determined that even assuming for argument purposes that Carter had an Alabama homestead and with the only possible situs of such a homestead being the Scottsboro Property, Carter's claim was not ripe. That property existed and had not been sold or otherwise disposed of by the Trustee. Also, the suit challenging the Divorce Decree was still pending.

Not satisfied with the Court's disposition of his demand for monies for his claimed homestead exemption, Carter filed another request for payment on March 7, 1997. At a hearing held June 17, 1997, the Trustee and the Trust reaffirmed their objections to payment of the claimed Alabama homestead exemption. All contended Carter misrepresented his residence as the Scottsboro Property. The Trust alleged that the 1992 Homestead Order was obtained as a result of fraud perpetrated on the court by Carter. In support of this, the Trust cited Carter's testimony during the Conversion Hearing. Also, the Court had heard Carter's assertions regarding his residence at multiple hearings on multiple requests to change the venue of his case. In each, Carter asserted his residence was not in Alabama at the time his case was initiated. Added to his Conversion Hearing and venue transfer hearing testimony is that

given by him at the hearing on his request for payment of his homestead exemption sum. It was that the property located at 1103 Fleetwood Drive, Lookout Mountain, Georgia ("Lookout Mountain Property") was his residence when he filed bankruptcy and the Scottsboro Property had been purchased as a lake house. Even though Carter noted that he had spent considerable time with his former wife at the Scottsboro Property, he resided at the Lookout Mountain Property at the time of his bankruptcy filing. Carter asserted that he was *not* claiming the Alabama property as his residence. Rather, he considered his residence to be located in the state of Georgia.

### III. To Claim Is One Thing.

■ Once Carter filed his bankruptcy schedules listing exemptions pursuant to 11 U.S.C. § 522(1), the Trustee and his creditors had a limited time within which to object. Fed. R. Bankr.P. 4003(b); *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994). No objections were raised to Carter's claims of exemptions set forth in his schedules. Therefore, had a property claimed as exempt been specified in his schedules or otherwise properly described as required, it would have been exempt. 11 U.S.C. § 522(1); Fed. R. Bankr.P. 4003(b); *see Mercer v. Monzack,* 53 F.3d 1, 3 (1st Cir.1995); *Seror v. Kahan (In re Kahan),* 28 F.3d 79, 81 (9th Cir.1994), *cert. denied* 513 U.S. 1150, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995). Since no such listing of a homestead property occurred, this is not the outcome. Furthermore, no objection was or is required to have been made to a claim of an exemption for which no property is appropriately described as required under 11 U.S.C. § 522(1) and Fed. R. Bankr.P. 4003(b). *Mercer,* 53 F.3d at 3; *Kahan,* 28 F.3d at 81. *Cf. First Bank of Linden v. Sloma (In re Sloma),* 43 F.3d 637, 640–641 (11th Cir.1995). However, a complication has arisen. An objection was later raised to Carter's amended list of exemptions to which no contest was raised regarding its untimeliness as far as the homestead is concerned and for which an order is extant.

As already reflected, Carter's right to assert a homestead exemption was allowed by the 1992 Homestead Order which was founded on what the first judge in this case believed to be a resolution of various objections by the Trust to various claimed exemptions. This order was never appealed and is final. *Clark v. Brayshaw (In re Brayshaw)*, 912 F.2d 1255, 1256 (10th Cir.1990); *Sumy v. Schlossberg (In re Sumy)*, 777 F.2d 921, 923 (4th Cir.1985). Since the entry of the 1992 Homestead Order, no objection was raised to Carter's dictated exemptions by the Trustee or his predecessor, the Trust, or any other creditor until payment of the exemptions was initially sought by Carter in March of 1996. As a result, Carter's right to assert an exemption for a homestead in Alabama — which is different from whether any such claim is able to be paid — is not contestable. The simple essence of this ruling is that recognition of the finality of an order is what is called for in this case where the parties objecting to payment of the homestead dollar amount acknowledged in their filings with this Court they were aware years ago and by no later than the Conversion Hearing that Carter contended his residence was in Georgia—not Alabama.

As befits a case of this sort, a claim of exemption may have been allowed to have been asserted by the 1992 Homestead Order. This does not preclude the Trustee, the Trust, or any other party with standing to challenge Carter's right to payment or other satisfaction of the claimed exemption when property of the estate—not property removed from the estate by the proper, timely claim of exemption under 11 U.S.C. § 522(1)—is to be used to pay the asserted exemption's value. *Cf. Mercer*, 53 F.3d at 4.

### IV. Fulfillment Is Another Matter— The Impedimenta

Although, the 1992 Homestead Order recognized Carter's right to advance a homestead exemption, it did not—indeed could not for want of evidentiary fact—determine whether Carter possessed a homestead under Alabama law from which monies or other property could be obtained to satisfy the exemption claimed. It also does not order payment of monies for any asserted exemptions. This case is unlike that involved in the Supreme Court's opinion in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). There, the trustee's failure to timely object to the dollar valuation of the property claimed as exempt and that of an exemption for claims of an unknown value asserted in a civil proceeding allowed proceeds from an employment discrimination claim to be exempted from the debtor's bankruptcy estate to an extent in excess of a small portion of what statutorily was otherwise able to be exempted. It also is a case for which no explicit exemption was available for the discrimination claims and another generalized exemption would have had to have been used as the basis of the debtor obtaining the proceeds received from the civil damage award. Carter's case does not concern whether the dollar amount of a claimed exemption for a specifically identified property, if not objected to, may exceed that which is statutorily allowable. Nor does it involve a valuation of a suitably identified property interest. Contraposed to *Taylor* in which a property actually existed, was identified and for which a claim of exemption was made, this case is one in which a specific statutory exemption has existed, has been asserted, and for which there is no corresponding property of the type claimed.

The identical distinction causes Carter's request for payment of the dollar value of the claimed Alabama homestead exemption to not fall within the ruling of the United States Court of Appeals for the Eleventh Circuit in *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994). In *Green*, the Eleventh Circuit addressed and resolved a debtor's ability to exempt the entire, yet as of the time of claiming the exemption, unknown value of a properly identified asset from the bankruptcy estate. Neither the 1992 Homestead Order nor the schedules established that Carter had any homestead property in Alabama. It remains to be assayed whether the laws or constitution of Alabama recognize a property as Carter's homestead from which he is entitled to payment of the asserted exemption.

The right to claim a homestead in Alabama is established constitutionally through Article

X, § 205 of the Alabama Constitution of 1901 and by Ala.Code § 6–10–2 (1993). Article X, § 205 of the Alabama Constitution of 1901 provides that a homestead of up to two thousand dollars in value is exempt from sale on execution or other process from a court. This was legislatively enhanced to five thousand dollars in value by Ala.Code § 6–10–2 (1993).

■ A prerequisite to a claim for a homestead in Alabama is actual occupancy or the intent to actually occupy precluded only by unavoidable circumstances. *Hill v. Quinlan (In re Quinlan)*, 12 B.R. 824 (Bankr.M.D.Ala.1981); *see also Gowens v. Goss*, 561 So.2d 519, 522 (Ala.1990)(The property claimed as homestead must be the actual residence of the party claiming the exemption. The required occupancy has been described as "occupancy in fact and a clearly defined intention of present residence and occupancy.") The requirement of actual occupancy must be accompanied by a clearly defined intent of present residence. Intent without occupancy does not create the homestead right. *Memory v. Brasington (In re Brasington)*, 10 B.R. 76 (Bankr.M.D.Ala.1981); *Blum v. Carter*, 63 Ala. 235 (Ala.1879)(An occupancy in fact or a clearly defined intention of present residence and actual occupation delayed only by the time needed to effect removal, finish repairs, or complete construction of a dwelling is necessary for a valid homestead claim. An undefined intent to build or occupy at some future date is not sufficient.) With the exclusion of the case law caveats not applicable to Carter and to qualify under the homestead requirements, be must have been a resident of the state of Alabama and in fact occupied a home located within the geographic confines of Alabama. *Sims v. Cox*, 611 So.2d 339, 340 (Ala.1992).

■ Carter's testimony before this Court is explicit: he did not have as his homestead any real property located in Alabama at the time required for one to have existed for exemption in this bankruptcy case! There was no residence and no actual occupancy of a residence in Alabama and no requisite intent of residence and occupancy. That this is the true state of facts is highlighted by Carter's representations and testimony during not only the hearings held on the motions for payment of exemptions, but also at multiple hearings on Carter's various requests to transfer his bankruptcy case to the Eastern District of Tennessee. Again and unlike other matters where Carter has been inconstant and inconsistent, his representations and testimony have been since 1994 that his residence before, at, and after filing of his bankruptcy was just outside Chattanooga, Tennessee at the Lookout Mountain Property located in Georgia. Thus and although a homestead exemption under Alabama law was claimed by Carter, it did not as a matter of fact exist, and Carter did not have a homestead under Alabama law.[1]

## V. The Arithmetic: Nothing From Nothing Equals Nothing

■ Essentially what Carter has done is similar to one claiming all exemptions provided by state and federal law without regard to whether any property exists for the exemptions claimed. A most basic exemplar is a debtor with no property within the scope of 11 U.S.C. § 541 avowing a right to every exemption listed in either § 522(d) of the Bankruptcy Code, 11 U.S.C. § 522(d), or under applicable state and non-bankruptcy federal law, whichever is appropriate. The claim of such exemptions does not result in monies or properties of the bankruptcy estate being exempted out of the estate and reverting to the debtor. Exercising an exemption right for which no corresponding property of the type required exists does not cause such property to come into existence. Likewise, nothing is available to remove from the bankruptcy estate by the exemption process. *Cf. Sloma*, 43 F.3d at 640–641.

Carter's case is no different. Although the facts in Carter's case are subtly different from those of the example, the analogy is the

---

1. Because a homestead under Alabama law requires residence and actual occupancy within Alabama and unlike the laws of at least one other state, *see e.g. In re Arrol*, 207 B.R. 662 (Bankr. N.D.Cal.1997), Alabama does not provide for the claim of a homestead exemption for a residence located outside its geographic boundaries. *Cf. Sims v. Cox*, 611 So.2d 339, 340 (Ala.1992).

same: to be paid monies from disposition of a property or in satisfaction of a claim against a property of necessity requires that it exist. Carter's claim to a homestead exemption in Alabama when none has existed does not result in his having something revest. Nor does the Trustee of his bankruptcy estate have to pay monies and/or transfer other properties of the bankruptcy estate to Carter to satisfy a claim of exemption in nothing. One may only surmise that Carter views the approximate six million three hundred thousand dollars collected and the in excess of two million seven hundred thousand dollars currently held by the Trustee from the sale of estate properties located in Texas, Alabama, Tennessee, and Georgia as somehow including monies from his homestead. However and for the reasons set forth, his contended Alabama homestead exemption cannot be the source of payment. No other basis for a homestead having been asserted, the proceeds from the sale of non-Alabama properties are likewise not a source for payment.

Although unusual in result, it is one well suited to this case and Carter. One who claims what is not accurate to avail one's self of the ability to file bankruptcy in a predetermined judicial district should not be allowed to use that which is false to his benefit. This Court's decision of granting nothing to Carter for the bare claim of an Alabama homestead when none has existed is consistent with this principle. Thus, the principal held by the Trustee is not to be dissipated by the payment of monies to Carter for satisfaction of his declared exemption of a supposititious Alabama homestead.