J-A26033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C. DWYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: NATIONAL INDEMNITY | : | |
| COMPANY | : | No. 149 WDA 2016 |

Appeal from the Order January 11, 2016
in the Court of Common Pleas of Indiana County,
Civil Division, No(s): 12296 CD 2015

BEFORE: BENDER, P.J.E., RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JANUARY 27, 2017**

National Indemnity Company ("National") appeals from the Order granting the Petition to Transfer Structured Settlement ("Petition to Transfer") filed by DRB Capital, LLC ("DRB"),[1] and Cameron Dwyer ("Dwyer"), in which Dwyer assigned his weekly payments to DRB at a discounted value. We reverse.

Dwyer (d/o/b 12/27/68), while working as a security specialist for Academi LLC ("Academi"), in Afghanistan in 2012 and 2013, injured his back, requiring surgery. At the time of the injury, Allied World Assurance Company ("Allied") was the workers' compensation insurance carrier for Academi. Further, at the time of the injury, Dwyer's average weekly salary was $2,103.00. Dwyer filed a claim for benefits due to his injuries under the

---

[1] DRB is a factoring company, which typically buys future structured-settlement payments in exchange for discounted lump-sum payments.

Longshore and Harbor Workers' Compensation Act ("LHWCA").[2]  To avoid litigation, the parties negotiated a Section 8(i) Settlement Agreement ("Settlement Agreement") wherein Dwyer would receive a lump sum of $134,000.00; a weekly payment of $787.00 for 520 weeks (totalling $390,000.00); and $26,000.00 in a lump sum for future medical benefits. Pursuant to the terms of the Settlement Agreement, Allied entered into a two-party Reinsurance Agreement ("Reinsurance Agreement") with National wherein Allied ceded its responsibilities for the weekly payments to National. On November 4, 2014, the United States Department of Labor ("DOL") approved the settlement.[3]

On November 16, 2015, Dwyer and DRB filed the Petition to Transfer pursuant to an Absolute Sale and Security Agreement ("Security Agreement") wherein Dwyer would assign his weekly payments to DRB in exchange for a lump sum of $203,754.27.  National filed a Response in Opposition, arguing that the Security Agreement violated the anti-

---

[2] 33 U.S.C.A. § 901 *et seq*.  "The LHWCA was enacted by Congress to provide workers' compensation benefits to persons injured in the course of maritime employment."  **Uveges v. Uveges**, 103 A.3d 825, 828 (Pa. Super. 2014) (citation omitted).

[3] The LHWCA requires that all settlements be approved.  **See** 33 U.S.C.A. § 908(i) (stating that "[w]henever the parties to any claim for compensation under this chapter, including survivors benefits, agree to a settlement, the deputy commissioner or administrative law judge shall approve the settlement within thirty days …").

assignment provision of the LHWCA[4] and the Pennsylvania Structured Settlement Protection Act ("SSPA").[5] The trial court granted the Petition to Transfer.

National filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, National raises the following questions for our review:

A. Did the trial court err as a matter of law and abuse its discretion in concluding that the underlying payments due to [Dwyer] were the result of an annuity agreement, contrary to the evidence that the underlying payments were the result of [the] [R]einsurance [A]greement, which error contributed to the court's failure to abide by the clear language of the applicable statutes?

B. Did the trial court err as a matter of law and abuse its discretion in approving [Dwyer and DRB's] requested transfer of [Dwyer's] structured settlement payment rights where that transfer contravenes federal law — in particular, the non-assignment provisions of the [LHWCA]?

C. Did the trial court err as a matter of law and abuse its discretion in approving [Dwyer and DRB's] requested transfer

---

[4] The anti-assignment provision of the LHWCA states the following:

No assignment, release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.

33 U.S.C.A. § 916.

[5] 40 P.S. § 4001 *et seq*. The SSPA "is designed to protect beneficiaries of structured settlements from being taken advantage of by others." ***In re Benninger***, 357 B.R. 337, 351 (Bankr. W.D. Pa. 2006).

of [Dwyer's] structured settlement payment rights where that transfer contravenes [SSPA]?

D. Did the trial court err and abuse its discretion in entering final [O]rders[,] which expose [National] to duplicative payment obligations to both [Dwyer] and [DRB] simultaneously?

Brief for Appellant at 7 (issues renumbered, capitalization omitted).

In its first claim, National contends that the trial court erred in concluding that the weekly payments were an annuity issued by Columbia Insurance Company ("Columbia"). *Id*. at 30-31. National argues that the weekly payments are clearly the product of the Reinsurance Agreement. *Id*. at 31-32.

DRB concurs with National's contention and states that the trial court erred in finding that the weekly payments were the result of an annuity issued by Columbia. Brief for Appellee at 13-15. DRB does not dispute that National has a continuing obligation to make weekly payments to Dwyer because of the structured settlement. *Id*. at 14-15. DRB claims that the error was harmless, as it would not affect the approval of the transfer. *Id*. at 13-14. DRB further asserts that under the SSPA, a transfer of rights is applicable from either a structured settlement obligor or an annuity issuer. *Id*. at 14.

Here, the parties agree that the trial court erred in finding the weekly payment was an annuity. However, this error does not result in a reversal of the trial court's Order granting the Petition to Transfer because we must determine if the transfer of the weekly payments, whether an annuity or a

structured settlement, was proper under the LHWCA and SSPA. Thus, while the trial court clearly erred in stating that the weekly payments were the result of an annuity, we will address National's remaining claims.

In its second claim, National contends that the trial court erred as a matter of law in concluding that the anti-assignment provision of the LHWCA was not applicable. Brief for Appellant at 16, 26. National argues that the plain language of Section 916 of the LHWCA states that "no assignment … of compensation or benefits due or payable under this Act … shall be valid." *Id*. at 17 (quoting 33 U.S.C.A. § 916). National claims that because the LHWCA governed the weekly payments, and Section 916 is unambiguous, the trial court should have found that the Petition to Transfer was barred by Section 916. Brief for Appellant at 19, 26. National further asserts that no exception applies to the facts of the instant case. *Id*. at 17-18.

National further argues that the trial court's reliance upon *In re Sloma*, 43 F.3d 637 (11th Cir. 1995), in conducting a statutory analysis of Section 916, was misplaced. Brief for Appellant at 19. National points out the *Sloma* Court's conclusion that annuity payments were not "due or payable" under Section 916, as the payments were being made by a third party and the purpose of the anti-assignability provision ended when the annuity was purchased. *Id*. at 21-23. National claims the *Sloma* Court's reliance on the fact that payments made by a third party alters the assignability of benefits language in Section 916 is not supported by the

plain language of that statute. *Id*. at 22-23. National argues that *Sloma* was a result-oriented decision and does not have persuasive value in this case. *Id*. at 23-24; *see also id*. at 24-25 (wherein National cites to an unpublished decision from Virginia where the court distinguished *Sloma* as pertaining only to bankruptcy issues, and found that structured settlement payments governed by the LHWCA could not be assigned under Section 916); Reply Brief for Appellant at 14-19.

"The construction of a federal statute is a matter of federal law." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 51 (Pa. 2011) (citation omitted). "Pursuant to federal rules of statutory construction, the courts consider the particular statutory language, as well as the design of the statute and its purposes in determining the meaning of a federal statute." *Id*. In analyzing a federal statute, "we must first determine whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). Where the statute is clear, "[w]e must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

Initially, we will review the Eleventh Circuit Court of Appeals interpretation of Section 916 in *Sloma*. While Pennsylvania courts may use federal authority as persuasive authority, "[f]ederal court decisions do not control the determinations of the Superior Court." *Bochetto v. Piper Aircraft Co.*, 94 A.3d 1044, 1050 (Pa. Super. 2014) (citation omitted). Indeed, "[o]ur law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved." *Id*. (citation omitted).

In *Sloma*, Lawrence Sloma ("Sloma") was injured in a work-related accident, and filed a claim for damages pursuant to the LHWCA. *In re Sloma*, 43 F.3d at 638. Sloma's employer and its insurance carrier negotiated a settlement under which the insurance carrier paid Sloma $10,000 in cash, and purchased an annuity from which Sloma was to receive $500 per month for twenty years, and then lump sum payments in certain specified years, for a total of $180,000. *Id*. Thereafter, Sloma obtained an $85,000 loan to acquire and operate a business and used his annuity payments as collateral to secure the loan. *Id*. The bank initially received the monthly payments until Sloma's business failed, at which point Sloma instructed the annuity company to send all future payments to him personally and not the bank. *Id*. at 639. After the bank filed suit against Sloma, judgment was entered in favor of the bank in the amount due under

- 7 -

the note. *Id*. Thereafter, Sloma filed for bankruptcy, asserting an exemption as to the payments due from the annuity company. *Id*. The bankruptcy court and federal district court found that the LHWCA prohibited the assignment of the annuity to the bank. *Id*.

On appeal, a divided Eleventh Circuit studied the language of Section 916, specifically "due or payable under this chapter," and determined that Sloma received the benefits of $180,000 under the LHWCA through the purchase of the annuity and $10,000 in cash. *Id*. at 640. The Court stated that "[t]he payments received by Sloma under the annuity contract were not due and payable under the Act; they were payments made to him by a third party[.]" *Id*.; *see also id*. (quoting *McIntosh v. Aubrey*, 185 U.S. 122, 125 (1902), and applying the reasoning from that case, involving a different statute, and concluding that an anti-assignment exemption protects the funds only while in transmission to the annuitant, and once the money has been paid to him, it has "inured wholly to his benefit" and could be seized). The Court concluded that "[t]he purpose of the anti-assignability provisions of the [LHWCA] to benefit an injured employee was served and ended once the amount of the award of $180,000.00 was paid to Sloma by the payment of $10,000.00 and the purchase, [o]n his behalf, of an annuity for $170,000.00." *In re Sloma*, 43 F.3d at 640. Thus, the Court concluded

that Sloma's assignment of the annuity payments to the bank was valid, and that Sloma had no right to redirect the payments to himself. *Id*.[6]

The *Sloma* Court interpreted the phrase "due or payable under this chapter" in Section 916 to allow a claimant to assign an already purchased annuity, as the claim under the LHWCA was finally resolved, and the payments were made pursuant to a contract. Thus, we must resolve whether the plain language of Section 916 prohibits the assignment of benefits where the employer/insurer entered into a re-insurance agreement with another insurer to pay the structured settlement payments. In other words, a determination must be made as to whether Dwyer's claim under the LHWCA was resolved when the Reinsurance Agreement was entered, and whether the settlement payouts are being made to him pursuant to a contract where he is the third party beneficiary.

While the LHWCA does not define "due" or "payable," we must construe the words according to their common and approved usage. *See Smith v. United States*, 508 U.S. 223, 228 (1993) (noting that "[w]hen a word is not defined by statute, we normally construe it in accord with its

---

[6] The dissent in *Sloma* stated that the assignment was invalid under Section 916. *In re Sloma*, 43 F.3d at 641. The dissent stated that the majority's interpretation of Section 916 would only prohibit the assignment of future payments under the LHWCA. *Id*. The dissent further argued that even under the majority's narrow interpretation of Section 916, the fact that Sloma's employer purchased an annuity for him did not satisfy the employer's obligation, as it had not made full payment of the funds. *Id*. at 641-42. Thus, the dissent stated that the installments of the annuity were in the process of being delivered, and was due or payable. *Id*. at 642.

ordinary or natural meaning."); ***Zimmerman v. Harrisburg Fudd I, L.P.***,

984 A.2d 497, 501 (Pa. Super. 2009) (stating that "[a]bsent a definition,

statutes are presumed to employ words in their popular and plain everyday

sense, and popular meanings of such words must prevail."). "Due" is

defined as "[o]wing or payable." BLACK'S LAW DICTIONARY 538 (8th ed. 2004).

"Payable is defined as "([o]f a sum of money or negotiable instrument) that

is being paid." ***Id***. at 1165. Accordingly, the LHWCA prohibits the

assignment of any compensation or benefits owed or being paid pursuant to

a claim under the LHWCA. ***See*** 33 U.S.C.A. § 916 (stating that "[n]o

assignment, release, or commutation of compensation or benefits due or

payable under this chapter, except as provided by this chapter … shall be

valid…."). Section 916 places no limitation on the type or method of

compensation, whether by an annuity or structured settlement payment,

that cannot be assigned. Moreover, the plain language of Section 916 does

not suggest that the anti-assignment clause only applies to future payments.

***See Bochetto***, 94 A.3d at 1050. In fact, the plain language of Section 916

applies to any benefits or compensation, either being paid or owed in the

future.

In this case, Dwyer entered into the Settlement Agreement with his

employer, Academi, and its workers' compensation insurance carrier, Allied,

arising out of his claim under the LHWCA. ***See*** Settlement Agreement,

10/14/14, at 1 (stating that Dwyer, Academi, and Allied "have reached an

agreement for [s]ettlement of [Dwyer's] entire claim under the [LHWCA.]");

*see also* 33 U.S.C.A. § 904 (imposing liability upon employer to pay compensation for claims under the LHWCA); *id*. § 935 (wherein the LHWCA extends liability to the employer's insurance carrier). As part of the Settlement Agreement, Allied was directed to enter into a reinsurance agreement, under which Dwyer would be paid $787.00 per week for 520 weeks. *See* Settlement Agreement, 10/14/14, at 5 (stating that "[u]pon approval of his [s]ettlement, the reinsurance agreement will pay, and [Dwyer] shall receive, SEVEN HUNDRED EIGHTY SEVEN DOLLARS and 00/100 ($787.00) per week, beginning December 1, 2014[,] for 520 weeks."); *see also id*. (noting that the "reinsurance agreement is allocated for past and future compensation benefits."). Allied entered into the Reinsurance Agreement with National, which required National to pay the structured settlement weekly payments as set forth in the Settlement Agreement. *See* Reinsurance Agreement, 10/16/14, at 1 (unnumbered) (noting that the agreement was based upon the Settlement Agreement and identifying the various parties to the Settlement Agreement); *id*. at 6 (unnumbered) (stating that the schedule of payments commences on December 1, 2014, and that "the sum of seven hundred eighty seven dollars ($787.00) shall be payable weekly until 11/11/2024 (520 [c]ertain [w]eekly [p]ayments)."). The DOL approved the Settlement Agreement, and required

the parties to "pay forthwith all amounts due in accord with the [S]ettlement [A]greement[.]" Order, 11/4/14, at 2.

Here, the agreements clearly state that Dwyer is scheduled to receive weekly payments for a period of 520 weeks. Thus, based upon the plain language of section 916, Dwyer's receipt of the weekly structured settlement payments from National under the Reinsurance Agreement are "due or payable."[7]

Further, the structured settlement payments to Dwyer derive directly from the LHWCA. Here, the DOL approved the Settlement Agreement that Dwyer reached with Academi and Allied, resolving and settling his LHWCA claim. As part of the Settlement Agreement, the parties expressly agreed to enter into the Reinsurance Agreement as the method to pay Dwyer's weekly payments. Contrary to DRB's assertion that Dwyer's claim under the LHWCA was finally disposed because his receipt of the structured settlement payments arose out the Reinsurance Agreement, not the LHWCA, the plain language of both the Settlement Agreement and the Reinsurance Agreement state that the payments derive from the settlement of claims arising out of the LHWCA.

_____

[7] Even if we agreed with the **Sloma** Court's narrow interpretation of "due or payable" under Section 916, Dwyer would be receiving the weekly structured settlement payments in the future. **See** Settlement Agreement, 10/14/14, at 5 (stating that that the "reinsurance agreement is allocated for past and *future* compensation benefits.") (emphasis added); **see also** Reinsurance Agreement, 10/16/14, at 2 (unnumbered) (noting that National's obligation to make periodic payments "is an unfunded and unsecured obligation to pay money in the future.").

Moreover, it would be absurd to allow a party, who expressly settled a LHWCA claim, to avoid the anti-assignment clause of the LHWCA merely by engaging in the common practice of purchasing an annuity or having a separate insurance company pay the structured settlement payments. ***See, e.g., First Colony Life Ins. Co. v. Berube***, 130 F.3d 827, 828 (8th Cir. 1997); ***In re Sloma***, 43 F.3d at 638; ***In re Benninger***, 357 B.R. at 342; ***In re Jacobs***, 936 A.2d 1156, 1158 (Pa. Super. 2007); ***see also*** 40 P.S. § 4002 (defining "[s]tructured settlement obligor" as "the party that has the continuing obligation to provide periodic payments to the payee under a structured settlement agreement or a qualified assignment agreement."). To utilize the DRB interpretation of Section 916 would effectively render the LHWCA inapplicable, as any form of reinsurance agreement or annuity would be considered a payment of the outstanding claim. Thus, based upon the Settlement and Reinsurance Agreements, Dwyer's structured settlement payment rights are a "due or payable" award under the LHWCA, and cannot be assigned pursuant to Section 916. ***See*** 33 U.S.C.A. § 916. Accordingly, the Security Agreement is invalid.

Additionally, because the assignment of Dwyer's weekly payments contravened the LHWCA, the Security Agreement violated the SSPA. ***See*** 40 P.S. § 4003(a)(1) (stating that "[n]o transfer of structured settlement payment rights shall be effective … unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or

decree of a court of competent jurisdiction [and] [t]he transfer complies with the requirements of this act and will not contravene other applicable Federal or State statutes or regulations ….").

Here, the trial court improperly granted Dwyer's Petition to Transfer. Thus, we reverse the trial court's Order and direct National to continue to pay the weekly payments under the Reinsurance Agreement to Dwyer.[8]

Order reversed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017

---

[8] Based upon our disposition, we need not address National's remaining claim on appeal.